Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> THE CITY OF SEATTLE; SEATTLE DEPARTMENT OF FINANCE AND ADMINISTRATIVE SERVICES; and FRED PODESTA, in his official capacity as Director, Finance and Administrative Services, City of Seattle, <br><br> Defendants. | No.    16-cv-00322-RSL <br><br> **DEFENDANTS' FRCP 12(b)(1) MOTION TO DISMISS** <br><br> **ORAL ARGUMENT REQUESTED** <br><br> **NOTED ON CALENDAR: APRIL 22, 2016** |

DEFENDANTS' MOTION
TO DISMISS (16-cv-00322)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

DEFENDANTS' FRCP 12(b)(1) MOTION TO DISMISS ............................................... 1

I.   RELEVANT FACTUAL BACKGROUND ............................................................... 1

II.  ARGUMENT ........................................................................................................... 4

    A. Rule 12(b)(1) standard ...................................................................................... 6

    B. The Chamber's claims are not ripe.................................................................... 6

    C. Article III's standing requirements are not met, because no cognizable injury
       has been alleged, and because none of the alleged injuries are fairly traceable
       to the Ordinance nor redressable .................................................................... 11

        1.  The injuries alleged by the Chamber do not meet Article III standards........ 12

             (i)    Speculative injuries like those alleged are not "certainly
                  impending" as required by Article III ......................................... 12

             (ii)   Self-inflicted harm is not a cognizable injury under
                  Article III ..................................................................................... 15

             (iii)  Intent to violate the law is not a cognizable Article III injury .... 16

        2.  The other requirements of Article III standing are not met ........................... 17

    D. The Chamber does not have associational standing, because it does not meet
       any of the three prongs of the associational standing test ......................................... 17

        1.  The Chamber has not identified its allegedly affected members as
           required for associational standing ................................................................ 17

        2.  The Complaint fails to establish that the Chamber is seeking to
           vindicate interests germane to its purpose ................................................... 19

        3.  Individual member participation is required................................................... 20

III. CONCLUSION ..................................................................................................... 24

CERTIFICATE OF SERVICE ........................................................................................ 26

DEFENDANTS' MOTION
TO DISMISS (16-cv-00322) i

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967).................................................................................10

*Alaska Right to Life Political Action Comm. v. Feldman,*
    504 F.3d 840 (9th Cir. 2007) .............................................................7, 10

*Amalgamated Transit Union, Local 1756 v. Superior Court,*
    46 Cal.4th 993, 209 P.3d 937 (Cal. 2009) .............................................21

*Ariz. St. Leg. v. Ariz. Independent Redistricting Comm'n,*
    135 S. Ct. 1652 (2015)............................................................................11

*Aspen Grove Owners' Ass'n v. Park Promenade Apartments, LLC,*
    No. CV09-1110, 2010 WL 4860345 (W.D. Wash. Nov. 19, 2010) .......21

*Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity,*
    950 F.2d 1401 (9th Cir. 1991) ...............................................................20

*Associated General Contractors of Am., San Diego Chapter, Inc. v. Cal. Dept. of Transportation,* 713 F.3d 1187 (9th Cir. 2013) ..........................................18

*Cargill, Inc. v. Monfort of Colo., Inc.,*
    479 U.S. 104 (1986)................................................................................22

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
    589 F.3d 1115 (9th Cir. 2010) .................................................................6

*City of Los Angeles v. Kern,*
    581 F.3d 841 (9th Cir. 2009) ...................................................................4

*Clapper v. Amnesty Intern. USA,*
    133 S. Ct. 1138 (2013)....................................................................passim

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ...............................................................20

*Coalition for ICANN Transparency, Inc. v. Verisign, Inc.,*
    452 F. Supp. 2d 924 (N.D. Cal. 2006) ..................................................18

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

*Cole v. Oroville Union High School Dist.*,
   228 F.3d 1092 (9th Cir. 2000) ...................................................................................13

*Columbia Basin Apartment Ass'n v. City of Pasco*,
   268 F.3d 791 (9th Cir. 2001) ....................................................................................20

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)......................................................................................................4

*Davis v. FEC*,
   554 U.S. 724 (2008)........................................................................................5, 12, 24

*Ed Nowogroski Ins., Inc. v. Rucker*,
   137 Wash.2d 427, 971 P.2d 936 (Wash. 1999) .........................................................23

*FedEx Home Delivery*,
   361 NLRB No. 55, 2014 WL 4926198 (2014) ............................................................9

*Fin. & Sec. Prods. Ass'n v. Diebold, Inc.*,
   No. C04-0437WHA, 2005 WL 1629813 (N.D. Cal. Jul. 8, 2005) ...........................22

*Food & Water Watch, Inc. v. Vilsack*,
   79 F. Supp. 2d 174 (D.D.C. 2015)............................................................................16

*Greene v. Dayton*,
   806 F.3d 1146 (8th Cir. 2015) .....................................................................................2

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
   105 Wash.2d 778, 719 P.2d 531 (Wash. 1986) .........................................................21

*Hollingsworth v. Perry*,
   133 S. Ct. 2652 (2013)..................................................................................................4

*Hunt v. Wash. State Apple Advertising Comm'n*,
   432 U.S. 333 (1977)............................................................................................ *passim*

*Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*,
   476 U.S. 380 (1986)................................................................................................9, 23

*Kingman Reef Atoll Investments, LLC v. United States*,
   541 F.3d 1189 (9th Cir. 2008) .....................................................................................6

*Laird v. Tatum*,
   408 U.S. 1 (1972)........................................................................................................10

*Lake Mohave Boat Owners Ass'n v. Nat'l Park Serv.*,
   78 F.3d 1360 (9th Cir. 1995) .....................................................................................23

DEFENDANTS' MOTION
TO DISMISS (16-cv-00322) iii

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

*Legal Aid Soc. of Haw. v. Legal Services Corp.,*
    145 F.3d 1017 (9th Cir. 1998) ...................................................................................18

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)........................................................................................ *passim*

*Maya v. Centex Corp.,*
    658 F.3d 1060 (9th Cir. 2011) .....................................................................................6

*Mendia v. Garcia,*
    768 F.3d 1009 (9th Cir. 2014) ...................................................................................15

*Mont. Envt'l Info. Ctr. v. Stone-Manning,*
    766 F.3d 1184 (9th Cir. 2014) ...................................................................................11

*Munns v. Kerry,*
    782 F.3d 402 (9th Cir. 2015) ...............................................................................13, 16

*Nat'l Family Planning & Reproductive Health Assoc., Inc. v. Gonzales,*
    486 F.3d 826 (D.C. Cir. 2006)......................................................................................5

*Nissen v. Pierce County,*
    357 P.3d 45 (2015)......................................................................................................24

*Nelson v. King County,*
    895 F.2d 1248 (9th Cir. 1990) ...................................................................................13

*Pac. Nw. Generating Co-Op v. Brown,*
    38 F.3d 1058 (9th Cir. 1994) .....................................................................................19

*Pennsylvania v. New Jersey,*
    426 U.S. 660 (1976) *(per curiam)* ............................................................................15

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dept.*
    *of Agric.,*
    415 F.3d 1078 (9th Cir. 2005) ...................................................................................19

*Reno v. Catholic Soc. Servs., Inc.,*
    509 U.S. 43 (1993)........................................................................................................6

*San Diego County Gun Rights Committee v. Reno,*
    98 F.3d 1121 (9th Cir. 1996) ................................................................5, 14, 16, 17

*Savage v. Glendale Union High Sch. Dist. No. 205,*
    343 F.3d 1036 (9th Cir. 2003) .....................................................................................6

*Sierra Club v. Morton,*
   405 U.S. 727 (1972)................................................................18

*Simon v. Eastern Ky. Welfare Rights Org.,*
   426 U.S. 26 (1976)..................................................................13

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.,*
   770 F.3d 1282 (9th Cir. 2014) ................................................20

*Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009)................................................................18

*Texas v. United States,*
   523 U.S. 296 (1998)............................................................6, 11

*Thomas v. Anchorage Equal Rights Comm'n,*
   220 F.3d 1134 (9th Cir. 2000) ....................................... *passim*

*UFW v. Ariz. Ag. Employment Relations Bd.,*
   669 F.2d 1249, 1258 (9th Cir. 1982) .......................................2

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.,*
   517 U.S. 544 (1996)................................................................20

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.,*
   454 U.S. 464 (1982)................................................................12

*Villegas v. Princeton Farms, Inc.,*
   893 F.2d 919 (7th Cir. 1990) ...................................................2

*Wash. State Grange v. Wash. State Republican Party,*
   552 U.S. 442 (2008)..................................................................7

*Wisc. Dept. of Indus., Labor & Human Relations v. Gould Inc.,*
   475 U.S. 282 (1986)..................................................................8

## STATUTES, RULES, AND CONSTITUTIONAL PROVISIONS

15 U.S.C. § 26..............................................................................21

29 U.S.C. § 152..............................................................................2

Fed. R. Civ. P. 12....................................................................1, 6, 21

Revised Code of Washington

   RCW 19.86.090 ........................................................................21

DEFENDANTS' MOTION
TO DISMISS (16-cv-00322) v

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

RCW 19.108.010 ................................................................................................24

RCW 42.56.001 ................................................................................................23

RCW 42.56.010 ................................................................................................24

RCW 46.72.001 ..................................................................................................2

RCW 81.72.200 ..................................................................................................2

Seattle Municipal Code

    SMC 1.04.020 ...................................................................................................1

    SMC 6.310.110 ..................................................................................................1

    SMC 6.310.735 .......................................................................................3, 10, 24

Washington Consumer Protection Act...................................................................21

U.S. Const., Art. III, § 2........................................................................................4

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

## DEFENDANTS' FRCP 12(b)(1) MOTION TO DISMISS

In this lawsuit, the Chamber of Commerce of the United States ("the Chamber"), on behalf of unidentified members, seeks the facial invalidation of an ordinance the Seattle City Council recently enacted to increase the safety and reliability of for-hire transportation services in the City of Seattle. The Ordinance's major provisions will not be implemented until 2017 at the earliest, and any possible impact on the Chamber's members depends upon the discretionary future decisions of numerous independent actors. Accordingly, the Chamber's claims are not ripe. In addition, the Chamber lacks standing to pursue its claims on behalf of its members. Because the Chamber's lawsuit presents a non-justiciable controversy this Court should dismiss all of the claims in this case for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) or alternatively Fed. R. Civ. P. 12(b)(6).

## I    RELEVANT FACTUAL BACKGROUND

On December 14, 2015, the Seattle City Council passed the Ordinance Relating to Taxicab, Transportation Network Company, and For-Hire Vehicle Drivers ("the Ordinance"). *See* Complaint ¶29.[1] The Council enacted the Ordinance "to ensure safe and reliable for-hire and taxicab transportation service." Ordinance, Sec. 1(C). The Council explained that "driver coordinators"—the term used by the Ordinance to describe entities that provide for-hire transportation services to the public[2]—"establish the terms and conditions of their contracts with their drivers unilaterally, and may impose changes without advance warning or input from the drivers." *Id.* Sec. 1(E). In the Council's legislative judgment, this can adversely affect for-hire

---

[1] The Ordinance and its Legislative Summary (which are official records of the Office of the City Clerk) are attached as Exhibit A to the Declaration of Michael Ryan ("Ryan Decl."). The Legislative Summary shows that the Ordinance was passed by the City Council on December 14 and returned by the Mayor unsigned on December 23, 2015. By City law, Seattle Municipal Code ("SMC") 1.04.020(B), the Ordinance took effect January 22, 2016, 30 days after the Mayor returned it to the Council.

[2] *See* Ordinance, Sec. 2 (amending SMC 6.310.110). These "driver coordinators" include taxicab associations, transportation network companies (like Uber and Lyft), and other for-hire passenger services.

DEFENDANTS' MOTION
TO DISMISS (16-cv-00322) - 1

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1  drivers' ability to provide "safe, reliable, stable, cost-effective, and economically viable"

2  transportation service, and lead to unrest and service disruptions. *Id.* Sec. 1(E), (F). The Council

3  determined, based on outcomes in other industries, that providing a means through which for-

4  hire drivers could address the terms and conditions of their contractual relationships collectively

5  would improve the safety and reliability of for-hire transportation services by, among other

6  things, reducing turnover, increasing driver commitment and experience, and alleviating the

7  pressure drivers face to provide transportation services in an unsafe manner (such as by working

8  too many hours, operating vehicles at unsafe speeds, or ignoring necessary maintenance). *Id.*

9  Sec. 1(I), (J). The Council's authority to enact the Ordinance was provided by RCW 46.72.001

10 and RCW 81.72.200, which authorize Seattle to regulate for-hire and taxicab transportation

11 services to ensure safety and reliability, and exempt such regulation from antitrust challenges.

12      To permit the drivers who contract with driver coordinators to have input in establishing

13 the terms and conditions of their contractual relationships with those driver coordinators, the

14 Ordinance establishes a process by which independent contractor drivers who contract with

15 Seattle's for-hire vehicle services may designate an "Exclusive Driver Representative" ("EDR")

16 to negotiate with the driver coordinators. The Ordinance applies only to independent contractors,

17 and expressly excludes from its coverage any driver who is an "employee" for purposes of the

18 National Labor Relations Act ("NLRA"). Ordinance, Sec. 6.[3]

19      Although the Ordinance became law on January 22, its major provisions cannot take

20 effect until the Director of the Seattle Department of Finance and Administrative Services

21

22 _____

[3] The NLRA excludes independent contractors, as well groups such as agricultural laborers, domestic workers, and public employees, from its definition of "employee." 29 U.S.C. §152(2), (3). Courts have previously recognized that, in excluding such workers, the NLRA leaves state and local governments free to regulate those workers' labor
23 relations. *See, e.g., Greene v. Dayton*, 806 F.3d 1146, 1149 (8th Cir. 2015); *UFW v. Ariz. Ag. Employment Relations Bd.*, 669 F.2d 1249, 1258 (9th Cir. 1982); *Villegas v. Princeton Farms, Inc.*, 893 F.2d 919, 921 (7th Cir. 1990).

DEFENDANTS' MOTION
TO DISMISS (16-cv-00322) - 2

1  ("Director") promulgates implementing regulations. Among other things, the Director still must

2  establish the qualifications for entities to be designated as a "Qualified Driver Representative"

3  ("QDR") eligible to serve as the EDR for drivers who contract with a particular driver

4  coordinator; set a commencement date after which such entities may apply for QDR designation;

5  and define which drivers are "qualifying drivers" eligible to participate in the EDR designation

6  process. The Director must select a commencement date of 180 to 240 days after the Ordinance's

7  effective date, Ordinance, Sec. 3 (adding SMC 6.310.735(A)), but expects that date will be no

8  sooner than September 19, 2016. Declaration of Douglas Carey ("Carey Decl.") ¶4. Entities have

9  30 days after the commencement date to apply to be a QDR, and the Director has 14 days to

10  grant or deny such applications. Ordinance, Sec. 3 (adding SMC 6.310.735(C)).

11  If an entity is designated as a QDR, it will have 14 days to notify a driver coordinator of

12  its intent to represent that driver coordinator's drivers. *Id.* Sec. 3 (adding SMC 6.310.735(C)(2)).

13  Upon receipt of that notice, driver coordinators will have to provide a list of qualifying drivers to

14  the QDR. *Id.* Sec. 3 (adding SMC 6.310.735(D)). The QDR then will have 120 days to seek the

15  support of a majority of the driver coordinator's qualifying drivers. *Id.* Sec. 3 (adding SMC

16  6.310.735(F)(1)). If a QDR submits statements of support from a majority of those drivers, the

17  Director will have 30 days to determine if the QDR should be designated as the EDR of those

18  drivers. *Id.* Sec. 3 (adding SMC 6.310.735(F)(2), (3)). If all of this occurs, the driver coordinator

19  and the EDR must commence negotiations over certain specified subjects. *Id.* Sec. 3 (adding

20  SMC 6.310.735(H)(1)).

21  Based on the anticipated commencement date of September 19, 2016, it is unlikely that

22  any QDR will be designated (and thus become able to request a list of qualifying drivers from a

23  driver coordinator) before November 2, 2016 (44 days after the commencement date), or that any

DEFENDANTS' MOTION
TO DISMISS (16-cv-00322) - 3

1    QDR will be designated an EDR until May 2017 (150 days thereafter). Carey Decl. ¶5.

2      The Chamber, which is not itself subject to the Ordinance, asserts that it has unidentified

3    members that might be required to provide a list of qualifying drivers to a QDR or to engage in

4    collective negotiations with an EDR at some point in the future. Complaint ¶14. It further alleges

5    that, in anticipation of that possibility, its unnamed members have retained outside labor

6    relations experts, and may hire additional labor relations personnel. Complaint ¶44. The

7    Chamber also contends that "[s]ome" of its members want to require their drivers to agree not to

8    provide statements of interest in support of any QDR, but that the Ordinance's anti-retaliation

9    provisions (which do not take effect until June 2016, *see* Ordinance, Sec. 5) prohibit such a

10   requirement. Complaint ¶46. The Chamber fails to identify any of these driver coordinators in its

11   Complaint, and has refused to provide the City with the names of those members. Ryan Decl. ¶3.

12   

**II  ARGUMENT**

13     Article III, section 2 of the United States Constitution limits federal jurisdiction to actual

14   "Cases" or "Controversies." *Clapper v. Amnesty Intern. USA*, 133 S. Ct. 1138, 1146 (2013).

15   Justiciability is a threshold question that must be resolved in every federal proceeding. *City of*

16   *Los Angeles v. Kern*, 581 F.3d 841, 845 (9th Cir. 2009). Courts "must put aside the natural urge

17   to proceed directly to the merits of [an] important dispute and to 'settle' it for the sake of

18   convenience and efficiency," lest the Judiciary exceed its powers. *Hollingsworth v. Perry*, 133 S.

19   Ct. 2652, 2662 (2013) (quotation omitted). "If a dispute is not a proper case or controversy, the

20   courts have no business deciding it, or expounding on the law in the course of doing so."

21   *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). The role of courts "is neither to issue

22   advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or

23   controversies consistent with the powers granted the judiciary in Article III of the Constitution."

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1   *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).

2   Courts should assume the absence of jurisdiction unless the record affirmatively shows

3   otherwise. *See San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121, 1126 (9th Cir.

4   1996). Whether relying on allegations or evidence, the Chamber "must demonstrate standing for

5   each claim [it] seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S.

6   724, 734 (2008) (quotation omitted).

7       This case should be dismissed on Article III grounds, both because it is unripe and

8   because standing is not present. Initially, as explained in Section II.B., this case is not ripe for

9   adjudication. It will be many months before the Ordinance has any potential impact on anyone,

10  and there is much uncertainty—most of which is outside the City's control—about what might

11  occur between now and then. That uncertainty precludes a finding of ripeness. The case should

12  also be dismissed for lack of standing. As set forth in Section III.C., Article III's standing

13  requirements are not met because the injuries alleged in the Complaint are insufficiently

14  imminent and/or are self-inflicted, and because any such injury is neither traceable to the

15  Ordinance nor redressable by the relief the Chamber requests. *See Lujan v. Defenders of Wildlife*,

16  504 U.S. 555 (1992). And as explained in Section III.D., even if the Chamber could demonstrate

17  that its unnamed members have standing in their own right, the Chamber cannot demonstrate that

18  it has associational standing under *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S.

19  333, 343 (1977), because the Chamber has not identified its injured members or established that

20  its purpose is germane to interests vindicated by this action, and because the participation of its

21  individual members would be required to adjudicate these claims.

22      In short, this case is not fit for judicial review, and should be dismissed.

23

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

### A.    Rule 12(b)(1) standard.

Motions challenging standing and ripeness are properly brought under Rule 12(b)(1) because they implicate a court's subject matter jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 1115, 1122 (9th Cir. 2010). A Rule 12(b)(1) attack "can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint." *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). Where a defendant challenges a complaint's allegations on their face, the court must accept as true all material allegations of fact, but need not accept bare legal conclusions. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 & n.3 (9th Cir. 2011). Where a defendant challenges the evidentiary basis for those allegations, a plaintiff must present evidence to support those allegations, and the court must make findings of fact. *Kingman Reef Atoll Investments, LLC v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008). Here, the City brings both a facial and a factual challenge.

### B.    The Chamber's claims are not ripe.

The Chamber's lawsuit should first be dismissed because its claims are not ripe.

Ripeness derives from both constitutional limitations on judicial power and prudential reasons for deciding not to exercise jurisdiction. *See Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993); *Thomas*, 220 F.3d at 1138. "[B]ecause the focus of our ripeness inquiry is primarily temporal in scope, ripeness can be characterized as standing on a timeline." *Id.* at 1138. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation omitted). Ripeness is "peculiarly a question of timing, designed to prevent the courts,

through avoidance of premature adjudication, from entangling themselves in abstract

disagreements." *Thomas*, 220 F.3d at 1138 (citations & quotations omitted). If the Chamber fails

to meets its burden to demonstrate this case is prudentially ripe, the Court need not address

constitutional standing or ripeness. *See Alaska Right to Life Political Action Comm. v. Feldman*,

504 F.3d 840, 849 (9th Cir. 2007).

The ripeness concerns here are particularly strong because the Chamber attacks the

Ordinance on its face. Such challenges are "disfavored" not only because they are "contrary to

the fundamental principle of judicial restraint" and "threaten to short circuit the democratic

process by preventing laws embodying the will of the people from being implemented in a

manner consistent with the Constitution," but also because they "often rest on speculation" and

require courts to resolve important legal questions prematurely and without sufficient factual

context. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008)

(citations & quotations omitted).

In assessing constitutional ripeness, courts in the Ninth Circuit consider three factors: (1)

whether the party challenging the law faces "a realistic danger of sustaining direct injury as a

result of the statute's operation and enforcement;" (2) whether there is a specific threat of

enforcement of the challenged law; and (3) the history of the enforcement of the law in question.

*Thomas*, 220 F.3d at 1139-41. In *Thomas*, two landlords who stated that they had discriminated

against and would continue to discriminate against unmarried couples filed a challenge to state

laws prohibiting rental discrimination on the basis of marital status. *Id.* at 1137. In concluding

the challenge was not ripe, the *en banc* court said:

> [A]ny threat of enforcement or prosecution against the landlords in this case—
> though theoretically possible—is not reasonable or imminent. The asserted threat
> is wholly contingent upon the occurrence of unforeseeable events: whether the

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1     landlords retain their rental properties; whether an unmarried couple will seek to
2     lease available property; whether the couple, having been denied tenancy, will file
      a complaint or communicate the alleged discrimination to the enforcement
3     agencies; and whether the enforcement agencies will decide to prosecute. The
      landlords do not at this time confront a realistic danger of sustaining a direct injury
4     as a result of the statute's operation or enforcement, and thus this dispute is not
      justiciable, because it is not ripe for court review.

5     *Id.* at 1141 (quotations & citations omitted).

6           Like the landlords' challenge in *Thomas*, the claims here are not ripe because the

7     Chamber cannot demonstrate that any of its members face any "realistic danger" of sustaining a

8     direct and imminent injury as a result of the Ordinance. Whether *any* harm to the Chamber's

9     members will occur depends on a series of contingent future events: first, whether after the

10    Director promulgates regulations and establishes a commencement date, an entity seeks

11    designation as a QDR; second, whether the Director determines that the entity meets the

12    requirements for a QDR and so designates it; and third, whether the QDR announces its intent to

13    seek to become the EDR for a driver coordinator that is a member of the Chamber, requiring that

14    driver coordinator to turn over a list. Even assuming that turning over such a list constituted an

15    actual injury, no member of the Chamber will be required to provide any QDR with a list of its

16    qualifying drivers if any of these events fails to occur. And if an entity granted QDR status fails

17    to garner support from a majority of qualifying drivers or is otherwise deemed ineligible to serve

18    as the EDR for those drivers, no driver coordinator will be required to negotiate with an EDR.

19          That these events must occur before any challenge becomes ripe is no mere formality.

20    Instead, those events will necessarily shape the legal and factual issues presented in a challenge

21    that is actually ripe. For example, the Chamber alleges that the Ordinance is preempted under the

22    *Garmon* preemption doctrine, which prohibits states from regulating activities that are

23    "arguably" protected or prohibited by the NLRA and thus subject to the exclusive jurisdiction of

DEFENDANTS' MOTION
TO DISMISS (16-cv-00322) - 8

1    the National Labor Relations Board ("NLRB"). *Wisc. Dept. of Indus., Labor & Human Relations*

2    *v. Gould Inc.*, 475 U.S. 282, 286 (1986). The Chamber argues that *Garmon* applies here because

3    drivers who seek recognition of an EDR may be "employees" under the NLRA and therefore

4    subject to the NLRB's jurisdiction. But the determination of whether such drivers are actually or

5    even arguably "employees" under the NLRA depends upon the specific details of the

6    relationship between a particular driver coordinator and its drivers, such as the degree of control

7    that the coordinator exercises over its drivers, which cannot be evaluated in the abstract before

8    any live controversy has arisen. *See Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S.

9    380, 394-95 (1986) (party claiming preemption must produce evidence showing workers at issue

10   could reasonably be deemed "employees" under NLRA); *FedEx Home Delivery*, 361 NLRB No.

11   55, 2014 WL 4926198, at *3 (2014) (in determining whether workers are employees or

12   independent contractors, NLRB "assess[es] and weigh[s]" eleven factors, none of which is

13   "decisive," and ultimate conclusion rests "on the factual circumstances of each case"). It may

14   also depend on whether the NLRB has made any determination about the "employee" status of a

15   particular driver coordinator's drivers. *See* Complaint ¶28 (discussing status of Uber drivers).

16   Moreover, until the Director has promulgated the necessary regulations, it will be impossible

17   (absent pure speculation) to know what steps the Director will take to prevent conflicting

18   determinations of employment status as between the NLRB and the City. In short, any potential

19   *Garmon* preemption issue cannot even begin to be addressed until it is known which driver

20   coordinator's drivers are at issue (if any), so that their particular circumstances can be analyzed.

21        Ultimately, the Chamber appears to believe that its claims are ripe because its members

22   are retaining labor relations experts to prepare their responses to the Ordinance, and because they

23   are voluntarily complying with the anti-retaliation provisions of the Ordinance. But as the Ninth

DEFENDANTS' MOTION
TO DISMISS (16-cv-00322) - 9

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1    Circuit held in *Thomas*, "neither the mere existence of a proscriptive statute nor a generalized

2    threat of prosecution satisfies the 'case or controversy' requirement." 220 F.3d at 1139 (citing

3    *San Diego County Gun Rights Committee*, 98 F.3d at 1126-27). Such voluntary actions are

4    inadequate to establish constitutional standing, as explained below, let alone to establish that an

5    abstract controversy regarding the legality of a local ordinance is ripe for judicial review. Just as

6    in *Thomas*, whether any person will respond to the Chamber's members' acts by investigating or

7    initiating enforcement, and whether that enforcement will result in any consequences, is

8    contingent and speculative, and the threat is not imminent. *See, e.g.*, Ordinance, Sec. 3 (adding

9    SMC 6.310.735(M)(1)(b)) ("Director may investigate" violations and penalties may only issue

10   upon written notice and opportunity to cure).[4]

11       Even assuming the Chamber can establish constitutional ripeness, this court should

12   decline to exercise its jurisdiction based on prudential concerns. In the context of ripeness, two

13   considerations guide the court: "'the fitness of the issues for judicial decision and the hardship of

14   withholding court consideration.'" *Thomas*, 220 F.3d at 1141 (quoting *Abbott Labs. v. Gardner*,

15   387 U.S. 136, 149 (1967)). Given all the facts that must be developed and events that must occur

16   before the merits of the Chamber's claims can be evaluated, this case is simply not fit for judicial

17   review. Courts "do not decide constitutional questions in a vacuum." *Thomas*, 220 F.3d at 1141

18   (quotation omitted); *see also Alaska Right to Life*, 504 F.3d at 849 (reversing district court on

19   prudential ripeness grounds for lack of a "concrete factual situation"). This Court should

20

21   _____

22   [4] The Chamber's effort to manufacture a ripe controversy by arguing that its members wish to procure signed
     agreements by their drivers not to authorize a QDR to represent them is particularly unconvincing. If the Ordinance
     is preempted, as the Chamber contends, then there is no reason for its members to procure such agreements, because

23   the authorizations have no legal force. If the Ordinance is lawful, then its members have no right to demand such
     agreements. What the Chamber seeks is simply an advisory opinion to assuage its unnamed members' subjective fears.
     *See, e.g., Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) ("subjective 'chill'" inadequate for Article III standing).

DEFENDANTS' MOTION
TO DISMISS (16-cv-00322) - 10

1  entertain questions regarding the Ordinance's legality only at the appropriate time, which is most

2  certainly not before any implementing regulations have been issued and before any facts

3  regarding its application to actual drivers and driver coordinators are available.

4        The Chamber cannot establish that its members will suffer any hardship if jurisdiction is

5  withheld. This is not a case like *Abbott*, for example, where the regulation being challenged had

6  a "direct effect on the day-to-day business" of the plaintiffs because the plaintiffs were

7  compelled to affix certain labels on their product under the threat of criminal penalties. 387 U.S.

8  at 152. Indeed, the hardship analysis "dovetails, in part, with the constitutional consideration of

9  injury." *Thomas* at 1142. As explained below, none of the injuries of which the Chamber

10  complains are "certainly impending," which is what Article III requires. *See infra* Part II.C.1.(i).[5]

11        For all of these reasons, this "dispute is more an abstraction than an actual case because

12  the supposed injury has not materialized and may never materialize." *Mont. Envt'l Info. Ctr. v.*

13  *Stone-Manning*, 766 F.3d 1184, 1190 (9th Cir. 2014). It is far too speculative to determine

14  whether any of the harms raised by the Chamber will ever come to pass. Courts should be

15  presented with concrete factual situations before they determine whether a duly enacted law is

16  inconsistent with the Supremacy Clause. After all, the States and their municipalities are the

17  "laboratories" of democracy, *Ariz. St. Leg. v. Ariz. Independent Redistricting Comm'n*, 135 S. Ct.

18  2652, 2673 (2015), and prematurely adjudicating the constitutionality of the Ordinance does

19  nothing to foster this cornerstone of our federalist system.

20        **C.**     **Article III's standing requirements are not met, because no cognizable injury**
              **has been alleged, and because none of the alleged injuries are fairly traceable**
21              **to the Ordinance nor redressable.**

22  _____

23  [5] Because the Ordinance "has yet to be interpreted" by Washington courts, "postponing consideration" of the issues
   here has the added advantage "of permitting the state courts further opportunity to construe the provisions" of the
   Ordinance. *Texas*, 523 U.S. at 301 (1998) (quotation omitted).

DEFENDANTS' MOTION
TO DISMISS (16-cv-00322) - 11

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

The Chamber has the burden to establish constitutional standing. *Lujan*, 504 U.S. at 561. Article III standing has three essential elements:

> First, the plaintiff must have suffered an injury[-]in[-]fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560-61 (internal quotations, alterations and citations omitted). The Chamber has not alleged facts establishing that any driver coordinator could establish these three elements of standing, and the Chamber cannot, months or years before the Ordinance affects anyone, provide any evidence to prove such standing.

### 1. The injuries alleged by the Chamber do not meet Article III standards.

The injuries the Chamber asserts its members allegedly face from the Ordinance do not suffice to meet the requirements of Article III. Most of the injuries that the Chamber alleges are insufficiently imminent, because their occurrence depends upon a chain of speculative contingencies including actions by third parties not before this Court. The remaining injuries are self-inflicted and therefore not cognizable.

### (i) Speculative injuries like those alleged are not "certainly impending" as required by Article III.

The injury that forms the basis for Article III standing must be present "at the commencement of the litigation," *Davis*, 554 U.S. at 732, and must be either "actual" or else "*certainly* impending." *Lujan*, 504 U.S. at 564 n.2 (emphasis in original). Demonstrating proof of a non-conjectural and imminent injury ensures that legal issues "will be resolved, not in the

DEFENDANTS' MOTION
TO DISMISS (16-cv-00322) - 12

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1   rarified atmosphere of a debating society, but in a concrete factual context conducive to a

2   realistic appreciation of the consequences of judicial action." *Valley Forge Christian Coll. v.*

3   *Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). When a

4   party claims future injury, the Ninth Circuit has "repeatedly reiterate[d] that threatened injury

5   must be *certainly impending* to constitute injury in fact and that allegations of *possible* future

6   injury are not sufficient." *Munns v. Kerry*, 782 F.3d 402, 409 (9th Cir. 2015) (quoting *Clapper*,

7   133 S. Ct. at 1147) (emphasis in original; alterations omitted).

8          "[U]nadorned speculation" about future events is insufficient "to invoke the federal

9   judicial power." *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 44 (1976). So is a

10   theory that depends upon "a highly attenuated chain of possibilities." *Clapper*, 133 S. Ct. at

11   1148; *see also Cole v. Oroville Union High School Dist.*, 228 F.3d 1092, 1100 (9th Cir. 2000)

12   (injury of students and parents too speculative where it "depends upon highly speculative

13   assumption that a student seeking to give a sectarian speech or prayer will be chosen as

14   valedictorian or salutatorian, or will be elected by classmates to give an invocation"); *Nelson v.*

15   *King County*, 895 F.2d 1248, 1252 (9th Cir. 1990) (rejecting standing based on "extended chain

16   of highly speculative contingencies"). That is particularly true when the theory of injury rests

17   upon speculation concerning the actions of third parties. Thus, for example, in *Clapper*, a group

18   of human rights and labor attorneys claimed that "some of the people with whom they exchange

19   foreign intelligence information [were] likely targets of" a surveillance program they sought to

20   challenge on constitutional grounds, and so there was an "objectively reasonable likelihood that

21   their communications with their foreign contacts w[ould] be intercepted" under the challenged

22   statute. 133 S. Ct. at 1145, 1146-47. This theory of injury did not suffice for Article III purposes,

23   because it rested on speculation about whom the government would target for surveillance under

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1   that statute and whether the surveillance would be approved by a court. *Id.* at 1148-50. In

2   reaching this conclusion, the Court "decline[d] to abandon [its] usual reluctance to endorse

3   standing theories that rest on speculation about the decisions of independent actors." *Id.* at 1150.

4         In the instant case, any harms allegedly resulting from one of the Chamber's members

5   having to turn over a list of drivers to a QDR (Complaint ¶¶47-48), to recognize and negotiate

6   with an EDR as the collective representative of its drivers (*e.g, id.* ¶¶55, 63, 66-67), and/or to

7   "incur additional costs of doing business" as a result (*id.* ¶55), rest upon a number of speculative

8   contingencies including decisions and actions by third parties. Any purported injury that results

9   from having to release a driver list will occur only if (1) an entity seeks designation as a QDR;

10  (2) the Director determines that the entity fulfills the requirements for such designation; (3) the

11  QDR seeks to represent the drivers of a driver coordinator that is a member of the Chamber and

12  requests its list of drivers; and (4) the Director determines that the drivers at issue are

13  independent contractors and the driver coordinator is subject to the Ordinance. Further alleged

14  injuries will occur only if (1) the QDR then obtains statements of interest from a majority of

15  drivers so that the Ordinance requires the driver coordinator to recognize it as an EDR, and (2)

16  the subjects or nature of the negotiations that ensue are those of which the Chamber complains.

17  All of these contingencies depend upon the independent discretionary decisions and actions of

18  entities that might or might not seek designation as a QDR and might or might not seek to

19  become the EDR of a particular group of drivers. *See, e.g.*, Complaint ¶47 (pointing to

20  statements of intent by a Seattle labor union).

21         While the Ordinance may *allow* for such actions, it by no means *requires* them; the

22  Chamber's fears are thus "necessarily conjectural." *Clapper*, 133 S. Ct. at 1149; *see also San*

23  *Diego County Gun Rights Committee*, 98 F.3d at 1130 (rejecting injury based on increased price

DEFENDANTS' MOTION
TO DISMISS (16-cv-00322) - 14

of weapons when law did not require increases so harm depended on decisions by third-party manufacturers and dealers). Put simply, it is only the actions of non-parties that can make the Chamber's speculative fears a reality. If, but only if, those actions occur, an injury-in-fact may then exist. The Chamber's speculative future harms are not "certainly impending," and are therefore insufficient to satisfy Article's III injury-in-fact requirement.

(ii)   **Self-inflicted harm is not a cognizable injury under Article III.**

The Chamber alleges that its members are suffering present and imminent harm in that they have begun to hire labor relations experts and may hire labor relations personnel "to prepare for the potential organizing and bargaining activity that the Ordinance contemplates" and "have started and will continue to expend both time and money to educate their drivers about the disadvantages of choosing to be represented by an EDR." Complaint ¶¶44-45.

However, a litigant cannot "be heard to complain about damage inflicted by its own hand." *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (*per curiam*); *see also Clapper*, 133 S. Ct. at 1143, 1145-46, 1151 (fact that labor and human rights organizations had undertaken "costly and burdensome" measures in response to surveillance threat could not establish standing; "respondents cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly pending"); *Lujan*, 504 U.S. at 564 n.2 (when "the acts necessary to make the injury happen are at least partly within the plaintiff's own control," courts "have insisted that the injury proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all"); *Nat'l Family Planning & Reproductive Health Assoc., Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("We have consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing. Such harm does not amount to an 'injury' cognizable under Article III."); *Mendia v.*

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1    *Garcia*, 768 F.3d 1009, 1013 n.1 (9th Cir. 2014) (holding "self-inflicted injury" insufficient to

2    allege "'substantial risk' that [] future harm would occur" for standing purposes).[6] That the

3    Chamber's members wish to spend money in certain ways is an exclusively self-inflicted injury.

4            As the Supreme Court has emphasized, parties cannot "manufacture standing merely by

5    inflicting harm on themselves." *Clapper*, 133 S. Ct. at 1151 (citations omitted); *see also Food &*

6    *Water Watch, Inc. v. Vilsack*, 79 F. Supp. 3d 174, 196 (D.D.C. 2015) ("In other words, a plaintiff

7    cannot transform a remote risk into a concrete injury merely by taking steps to avoid that risk; to

8    hold otherwise would eliminate the injury-in-fact requirement entirely because plaintiff's actions

9    are always within plaintiff's control."). At bottom, if the Chamber's unnamed members have

10   elected to harm themselves in response to the Ordinance's enactment, or taken preemptive steps

11   to prepare for its impact almost a year in advance, such self-inflicted harms do not create an

12   injury-in-fact sufficient to create Article III standing.

13                   **(iii)    Intent to violate the law is not a cognizable Article III injury.**

14           Finally, the Chamber alleges that "[s]ome of [its] members" want to amend their driver

15   contracts to prohibit drivers from providing statements of interest to QDRs seeking to represent

16   them. Complaint ¶46. But this allegation also cannot establish standing, because those members

17   do not face any specific threat of prosecution. *See San Diego Gun Rights Committee*, 98 F.3d at

18   1126-28 (plaintiffs' alleged future plan to violate law but did not specify time or date and "a

19   general threat of prosecution is not enough to confer standing"); *cf. Thomas*, 220 F.3d at 1139.

20   The Ordinance makes enforcement discretionary, the City will provide an opportunity to correct

21

22   ───────────────────────
     [6] While *Clapper*'s discussion occurred in the context of Article III's second requirement (fairly traceable), the same
     basic principle applies in the context of Article III's first prong (injury-in-fact). *See, e.g., Munns v. Kerry*, 782 F.3d
23   402, 410 (9th Cir. 2015) (applying *Clapper*). In any event, the same arguments would support dismissal on the ground
     that the injuries are not fairly traceable to the Ordinance.

DEFENDANTS' MOTION
TO DISMISS (16-cv-00322) - 16

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1   any violation before imposing penalties under the Ordinance's anti-retaliation provisions, and the

2   agreements the Chamber's members seek are in any event legally meaningless. *See supra* note 4.

### 2.   The other requirements of Article III standing are not met.

4   The Chamber's primary fear—that drivers will seek a collective voice in negotiations

5   over certain issues—is not fairly traceable to the Ordinance because the Chamber itself alleges

6   that the question whether these drivers are employees under the NLRA is an open one. *See*

7   Complaint ¶¶27-28, 87. If the NLRB ultimately determines that such drivers are employees, they

8   will be allowed to unionize regardless of the terms of the Ordinance.

9   That prospect also means that the Chamber's injury is not redressable by the relief it

10  requests. Given the ongoing efforts at unionization that the Chamber alleges, *see* Complaint ¶28,

11  the Chamber's unnamed members will still have to hire labor relations consultants and undertake

12  efforts to dissuade their drivers from attempting to unionize. Thus, the complained of harms

13  would not necessarily be redressed by striking down the Ordinance.

### D.   The Chamber does not have associational standing, because it does not meet any of the three prongs of the associational standing test.

16  Claiming no injury of its own, the Chamber rests its standing upon that of its members.

    Complaint ¶14. To demonstrate "associational standing," the Chamber must establish that "(a)

17  [its] members would otherwise have standing to sue in their own right; (b) the interests [it]

18  seek[s] to protect are germane to [its] purpose; and (c) neither the claim asserted nor the relief

19  requested requires the participation of individual members in the lawsuit." *San Diego County*

20  *Gun Rights Committee*, 98 F.3d at 1131 (citing *Hunt*, 432 U.S. at 343). The Chamber does not

21  satisfy any of these requirements.

### 1.   The Chamber has not identified its allegedly affected members as required for associational standing.

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

The Chamber's associational standing fails at the first step because the Chamber has not identified members that would have standing in their own right. "[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review *be himself among the injured*." *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972) (emphasis added). An association claiming standing through its members must identify at least one member with an Article III injury and support that identification with affidavits establishing that member's injury. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *Lujan*, 504 U.S. at 563; *Legal Aid Soc. of Haw. v. Legal Services Corp.*, 145 F.3d 1017, 1030-31 (9th Cir. 1998).

The Chamber's Complaint does not meet this threshold requirement. Even if it were assumed that the Chamber's allegations of injury were sufficiently concrete and imminent to satisfy Article III (which they are not, *see infra* Section II.C.1), the Complaint does not identify any members who would suffer those injuries. Repeatedly, the Complaint simply asserts that some members are affected without identifying them.[7] When the City requested this information, the Chamber refused to provide the names of its allegedly affected members. Ryan Decl. ¶3.

The Chamber's failure to identify members that are actually suffering or will suffer Article III injuries from the Ordinance requires dismissal of its Complaint. *See Associated General Contractors of Am., San Diego Chapter, Inc. v. Cal. Dept. of Transportation*, 713 F.3d 1187, 1194-95 (9th Cir. 2013) (dismissing appeal for lack of jurisdiction because associational standing not shown when group failed to "identify any affected members by name" or to

---

[7] *See, e.g.*, Complaint ¶¶14 ("[s]ome" members "are subject to the Ordinance"), 44 (unnamed "members have incurred, and will continue to incur, substantial costs as a direct result of the Ordinance"; also referring to "these companies" and "these member companies), 45 (unidentified "members have started and will continue to expend both time and money" campaigning against collective representation), 46 ("Some of the Chamber's members" want to require drivers to sign agreements promising not to provide statement of interest to QDR).

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1   "submit[] declarations by any of its members attesting to harm they have suffered or will suffer

2   under [the challenged] program"); *Coalition for ICANN Transparency, Inc. v. Verisign, Inc.*, 452

3   F. Supp. 2d 924, 933-36 (N.D. Cal. 2006) (dismissing complaint where associational plaintiff

4   failed to identify an injured member). Because the City also raises a factual challenge to

5   standing, moreover, the Chamber is required to identify such injured members through affidavits,

6   not simply through allegations in pleadings.

7          Demanding that the Chamber name members with standing at the outset of the suit is not

8   an empty formalism. Neither the City nor the Court can adequately test whether an allegedly

9   aggrieved member has standing where the Complaint leaves one to guess about who that member

10  is. Without knowing which members are allegedly affected, it is impossible to determine whether

11  an entity is actually subject to the Ordinance (because the Ordinance only covers certain

12  companies, and other companies may be exempt if their drivers are employees) and what type of

13  harm, if any, that entity will suffer from the Ordinance's application.

14                  **2.      The Complaint fails to establish that the Chamber is seeking to
                         vindicate interests germane to its purpose.**

15         In order to meet *Hunt*'s second prong, the Chamber's purpose must be germane to the

16  interests it seeks to vindicate in this action. *See Ranchers Cattlemen Action Legal Fund United*

17  *Stockgrowers of Am. v. U.S. Dept. of Agric.*, 415 F.3d 1078, 1103-04 (9th Cir. 2005)

18  (environmental interests not germane to purposes of association organized to protect its

19  members' "trade and marketing interests"); *Pac. Nw. Generating Co-Op v. Brown*, 38 F.3d 1058,

20  1063 (9th Cir. 1994) (employees' and customers' aesthetic and recreational interests in salmon

21  not germane to purposes of business organizations representing direct purchasers of

22  hydropower). While the Chamber alleges that it "routinely advocates on matters of federal

23

DEFENDANTS' MOTION
TO DISMISS (16-cv-00322) - 19

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1    antitrust and labor relations policy and represents the interests of its members in antitrust and

2    labor relations matters before the courts," Complaint ¶13, it neither identifies what those member

3    interests are, nor sets forth its own organizational purpose. Thus, the Chamber's allegations do

4    not establish its associational standing to bring this action. *See Class Plaintiffs v. City of Seattle*,

5    955 F.2d 1268, 1286 (9th Cir. 1992) (denying associational standing where record was "barren

6    of any evidence concerning [party's] organizational purpose or of the grounds which bring its

7    membership together beyond the bald assertions set forth in [its] brief").

8                   **3.**      **Individual member participation is required.**

9        The Chamber also lacks associational standing as to several of its claims because the

10    individual participation of its unidentified members is necessary. *Hunt* requires that neither the

11    claim nor the relief requested requires the participation of individual members. Although a

12    request for injunctive and declaratory rather than damages typically involves a form of *relief* that

13    can be provided without requiring individual members' participation, *see, e.g., United Food &*

14    *Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553-54 (1996);

15    *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001), the third

16    requirement for associational standing is not limited to the relief requested. Rather, to have

17    associational standing, the Chamber must establish that *neither* the relief requested *nor* the claim

18    proffered demands individualized proof from the association's members. *See Associated Gen.*

19    *Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1408 (9th Cir. 1991). When

20    variations in the individualized circumstances of an association's members affect the nature of

21    their injuries or claims, those claims "are not susceptible to judicial treatment as systematic

22    policy violations that make extensive individual participation unnecessary," and associational

23    standing is improper. *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,

DEFENDANTS' MOTION
TO DISMISS (16-cv-00322) - 20

1  770 F.3d 1282, 1293 (9th Cir. 2014) (internal quotation marks and ellipses omitted). Here,

2  several of the Chamber's *claims* demand that the allegedly injured members participate, and the

3  Chamber thus lacks associational standing to pursue those claims on its members' behalf.

4       <u>Federal and state antitrust claims.</u>

5       The Washington Consumer Protection Act ("CPA") does not permit an association to sue

6  on behalf of its members. The CPA grants a cause of action (whether for injunctive relief or

7  damages) only to a "person who is injured in his or her business or property." RCW 19.86.090;

8  *see also Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 792,

9  719 P.2d 531, 539 (Wash. 1986) (injury to the plaintiff is indispensable element of private CPA

10  claim). An association asserting a CPA claim on behalf of its members cannot satisfy the third

11  part of the *Hunt* test, because the association must establish that *each member* upon whom it

12  relies for standing suffered an injury within the scope of the CPA. *See Aspen Grove Owners'*

13  *Ass'n v. Park Promenade Apartments, LLC*, No. CV09-1110, 2010 WL 4860345, at *4 (W.D.

14  Wash. Nov. 19, 2010). Even if that were not the case, the CPA by its terms allows private suits

15  *only* by an injured person, and thus prohibits associational standing. *See Amalgamated Transit*

16  *Union, Local 1756 v. Superior Court*, 46 Cal.4th 993, 1004, 209 P.3d 937, 944 (Cal. 2009)

17  (California unfair competition statute providing private right of action only to "person who has

18  suffered injury in fact" barred suit by association on behalf of injured members). Accordingly,

19  this Court can alternatively treat this motion as a Rule 12(b)(6) motion and dismiss the

20  Chamber's CPA claim for lack of statutory standing.

21       Similarly, a party seeking injunctive relief under federal antitrust law must rely on

22  Section 16 of the Clayton Act, which permits claims by a party "threatened [with] loss or

23  damage by a violation of the antitrust laws." 15 U.S.C. § 26. The Chamber does not contend *it* is

DEFENDANTS' MOTION
TO DISMISS (16-cv-00322) - 21

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1    threatened with loss or damage, only that its members might be. But any analysis of the damage

2    to the Chamber's members resulting from implementation of the Ordinance will require detailed

3    factual inquiries regarding the impact of the Ordinance on those individual members' operations,

4    market share, and financial performance, and any injunction must be tailored to the loss or

5    damage to those members. The court cannot evaluate the impact of the Ordinance on the

6    Chamber's members or accomplish the necessary tailoring without their participation.

7        In the alternative, this Court should hold that the Chamber does not have statutory

8    standing to seek injunctive relief on behalf of its members under federal antitrust law. To pursue

9    a claim under the federal antitrust laws, the plaintiff must do more than show an injury-in-fact;

10   the plaintiff must establish that it has suffered or will imminently suffer an "antitrust injury"—

11   *i.e.*, an injury "of the type the antitrust laws were designed to prevent and that flows from that

12   which makes defendants' acts unlawful." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104,

13   113 (1986) (quotation omitted). Further, the plaintiff "must prove it has or will suffer antitrust

14   injury *itself*." *Fin. & Sec. Prods. Ass'n v. Diebold, Inc.*, No. C04-04347WHA, 2005 WL

15   1629813, at *3 (N.D. Cal. Jul. 8, 2005). Accordingly, even if the Chamber could establish

16   associational standing under *Hunt* (which it cannot do both because such a claim involves

17   individualized proof of injury and because any antitrust injury its members might suffer is

18   entirely speculative, dependent on the conduct of third parties, and non-imminent), the federal

19   antitrust laws require that actions for injunctive relief thereunder be pursued by the individuals

20   who have actually suffered an antitrust injury, rather than by an associational representative. *Id.*

21       <u>*Garmon* Preemption</u>. The Chamber's *Garmon* preemption claim similarly demands the

22   participation of its members. It is not enough for a party claiming *Garmon* preemption to point to

23   some theoretical argument about the applicability of the NLRA. Instead, the "party asserting pre-

1  emption must advance an interpretation of the Act that is not plainly contrary to its language and

2  that has not been authoritatively rejected by the courts or the [National Labor Relations] Board,"

3  and must "put forth enough evidence to enable the court to find that the Board reasonably could

4  uphold a claim based on such an interpretation." *Int'l Longshoremen's Ass'n*, 476 U.S. at 395

5  (internal quotation omitted). In other words, the Chamber must put forth evidence that the

6  workforce of a specific member of the Chamber is comprised of drivers who are arguably

7  employees rather than independent contractors under the NLRB's multi-factor, fact-specific

8  analysis. *See supra* at 8-9. Even if that question were ripe for review (which it is not), any

9  answer would depend upon the specific factual circumstances of the driver coordinator in

10  question, and any injunctive relief would necessarily be tailored to that coordinator's specific

11  circumstances—such as by providing for expiration of the injunction should the NLRB

12  determine that the coordinator's drivers are independent contractors or should the coordinator

13  make a material change in the drivers' working conditions that clarifies their status as

14  independent contractors. The participation of individual Chamber members whose driver

15  workforces might "arguably" be subject to the NLRA is thus required for any litigation of the

16  Chamber's *Garmon* preemption claim. *See, e.g., Lake Mohave Boat Owners Ass'n v. Nat'l Park

17  Serv.*, 78 F.3d 1360, 1367 (9th Cir. 1995) (member participation required where legal issues

18  involved member-by-member variations and therefore required "individualized proof").

19      Public Records Act. Finally, the Chamber contends that the Ordinance violates

20  Washington's Public Records Act, RCW 42.56.001 *et seq.*, because it allows for the disclosure

21  of its members' "trade secret" driver lists, which it claims are "public records." To pursue such a

22  claim, the Chamber's members must demonstrate that they treat those lists as trade secrets, *i.e.*

23  that they derive economic value because of their secrecy and have taken reasonable efforts to

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1    keep the lists secret. *Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wash.2d 427, 438, 971 P.2d 936,

2    942 (Wash. 1999); RCW 19.108.010(4).[8] That fact-specific and individualized determination

3    requires the participation of the Chamber's members in this proceeding.

4         In any event, even assuming that disclosure of a driver list would constitute an injury-in-

5    fact for standing purposes, and even assuming that a challenge to this requirement were ripe and

6    appropriately litigated by an association, this would allow the Chamber to challenge *only* the

7    disclosure provision of the Ordinance, Sec. 3 (adding SMC 6.310.735(D)). It would not provide

8    any basis for challenging the Ordinance's other provisions, because the Chamber "must

9    demonstrate standing for each claim [it] seeks to press and for each form of relief that is sought."

10   *Davis*, 554 U.S. at 734 (quotation omitted).

## III    CONCLUSION

12        For these reasons, this Court should dismiss the case on the ground that the Chamber's

13   claims are not ripe and the Chamber lacks standing.

14

15        DATED this 28th day of March, 2016.

16                          PETER S. HOLMES
                            Seattle City Attorney

17

                     By:    /s/Michael K. Ryan
18                          WSBA #32091
                            Gregory C. Narver, WSBA#18127
19                          Jessica Nadelman, WSBA#27569
                            Robert Tad Seder, WSBA#14521
20                          Josh Johnson, WSBA#33570

---

21   [8] As the City will demonstrate if and when a PRA claim is justiciable (which it is not presently), a PRA challenge to
     the Ordinance's requirement that driver coordinators provide lists of drivers to QDRs is wholly without merit and
     borders on the frivolous. The PRA applies only "when an *agency* is requested to disclose public records." *Nissen v.*
22   *Pierce County*, 183 Wash.2d 863, 873, 357 P.3d 45, 51 (Wash. 2015) (emphasis added). The Chamber does not, nor
     could it ever, allege that any of its allegedly impacted members are "public agencies" under the PRA. *See* RCW
23   42.56.010(1) (defining "agency"). Therefore, the PRA is not even implicated and cannot create a protectable interest.
     Put simply, the PRA has no concern with the exchange of information between two private actors.

DEFENDANTS' MOTION                                          **PETER S. HOLMES**
TO DISMISS (16-cv-00322) - 24                               Seattle City Attorney
                                                           701 Fifth Avenue, Suite 2050
                                                           Seattle, WA 98104
                                                           (206) 684-8200

Assistant City Attorneys
Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050
Seattle, WA  98104
Phone: (206) 684-8207 – Michael K. Ryan
Phone: (206)684-8233 – Gregory C. Narver
Phone: (206)386-0075 – Jessica Nadelman
Phone: (206)727-8498 – Robert Tad Seder
Phone: (206)386-1099 – Josh Johnson
Fax: (206) 684-8284
E-mail: michael.ryan@seattle.gov
E-mail: gregory.narver@seattle.gov
E-mail: jessica.nadelman@seattle.gov
E-mail: tad.seder@seattle.gov
E-mail: josh.johnson@seattle.gov


STEPHEN P. BERZON (pro hac vice)
STACEY M. LEYTON (pro hac vice)
P. CASEY PITTS (pro hac vice)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, CA  94108
Phone: (415) 421-7151
Fax: (415) 362-8064
E-mail: sberzon@altber.com
        sleyton@altber.com
        cpitts@altber.com

Attorneys for Defendants

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that on this 28th day of March, 2016, I electronically filed this

DEFENDANTS' FRCP 12(b)(1) MOTION TO DISMISS, Declaration of Douglas Carey and

4

Declaration of Michael Ryan, with the Clerk of the Court using the CM/ECF system, which will

5

send notification of such filing to the below-listed:

6

7        Timothy J. O'Connell          tim.oconnell@stoel.com
         Noel J. Francisco             nfrancisco@jonesday.com
8        Steven P. Lehotsky            slehotsky@uschamber.com
         Jacqueline M. Holmes          jholmes@jonesday.com
9        Christian G. Vergonis         cvergonis@jonesday.com
         Warren Postman                wpostman@uschamber.com
10       Lily Fu Claffee               lfclaffee@uschamber.com
         Robert Stander                rstander@jonesday.com

11

12

13       DATED this 28th day of March, 2016, at Seattle, Washington.

14

                        By:    /s/Michael K. Ryan
15                             Michael K. Ryan, WSBA #32091
                               michael.ryan@seattle.gov
16

17

18

19

20

21

22

23

DEFENDANTS' MOTION
TO DISMISS (16-cv-00322) - 26