Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHAMBER OF COMMERCE OF THE )
UNITED STATES OF AMERICA, )
                                        )   No.   16-cv-00322-RSL
               Plaintiff, )
                                        )   DEFENDANTS' REPLY IN SUPPORT OF
          vs. )   MOTION TO DISMISS
                                        )
THE CITY OF SEATTLE; SEATTLE )   **ORAL ARGUMENT REQUESTED**
DEPARTMENT OF FINANCE AND )
ADMINISTRATIVE SERVICES; and FRED )   **NOTED ON CALENDAR:**
PODESTA, in his official capacity as Director, )   **MAY 20, 2016**
Finance and Administrative Services, City of )
Seattle, )
                                        )
               Defendants. )
_____ )

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS (16-cv-00322)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT .......................................................................................................................... 1

    A.    The Chamber has not shown any sufficiently imminent cognizable injury. ............... 1

            Future disclosure of driver list .................................................................................... 1

            Future mandated negotiations ..................................................................................... 3

            "Current" resource expenditures ................................................................................. 5

            Desired amendment of driver agreements ................................................................... 7

    B.    Several of the Chamber's claims require individual member participation. ........... 8

            Antitrust ...................................................................................................................... 8

            NLRA preemption ..................................................................................................... 10

            Public Records Act ................................................................................................... 11

    C.    The Chamber's claims are also not prudentially ripe. .............................................. 11

CONCLUSION ..................................................................................................................... 12

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS (16-cv-00322) i

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

**TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Alaska Airlines, Inc. v. City of Long Beach,*
  951 F.2d 977 (9th Cir. 1991) ............................................................................................. 3

*Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.,*
  151 F.Supp.2d 723 (W.D. Va. 2001) ................................................................................. 9

*Associated General Contractors v. City of Columbus,*
  172 F.3d 411 (6th Cir. 1999) ............................................................................................. 3

*Babbitt v. United Farm Workers Nat'l Union,*
  442 U.S. 289 (1979) ...................................................................................................... 7, 8

*Bland v. Fessler,*
  88 F.3d 729 (9th Cir. 1996) ............................................................................................... 7

*Bruster v. Uber Technologies, Inc.,*
  1:15-cv-02653-JG (N.D. Ohio) ......................................................................................... 5

*Cal. Pro-Life Council, Inc. v. Getman,*
  328 F.3d 1088 (9th Cir. 2003) ........................................................................................... 7

*Cargill, Inc. v. Monfort of Colorado, Inc.,*
  479 U.S. 104 (1986) ...................................................................................................... 5, 9

*City of Houston v. HUD,*
  24 F.3d 1421 (D.C. Cir. 1994) ......................................................................................... 12

*City of Oakland v. Lynch,*
  798 F.3d 1159 (9th Cir. 2015) ........................................................................................... 2

*Clapper v. Amesty Int'l USA,*
  133 S.Ct. 1139, 1148 (2013) ..................................................................................... 3, 6, 8

*Coons v. Lew,*
  762 F.3d 891 (9th Cir. 2014) ........................................................................................... 12

*Davis v. FEC,*
  554 U.S. 724 (2008) .......................................................................................................... 4

*Fin. & Sec. Prods. Ass'n v. Diebold, Inc.,*
  No. C04-04347WHA, 2005 WL 1629813 (N.D. Cal. Jul. 8, 2005) ................................. 9

*Friends of Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.,*
  528 U.S. 167 (2000) .......................................................................................................... 6

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS (16-cv-00322) ii

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

*Harris v. Quinn*,
    134 S.Ct. 2618 (2014) .......................................................................................................... 3

*Harris v. Quinn*,
    656 F.3d 692 (7th Cir. 2011) ................................................................................................ 3

*Cal. ex rel. Harris v. Safeway, Inc.*,
    651 F.3d 1118 (9th Cir. 2011) ............................................................................................ 10

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) ................................................................................................................ 8

*Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*,
    476 U.S. 380 (1986) .......................................................................................................... 10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................................ 4

*Marine Engineers v. Interlake S.S. Co.*,
    370 U.S. 173 (1962) .......................................................................................................... 10

*MedImmune, Inc. v. Genetech, Inc.*,
    549 U.S. 118 (2007) ............................................................................................................ 7

*Meese v. Keene*,
    481 U.S. 465 (1987) ............................................................................................................ 6

*Mendia v. Garcia*,
    768 F.3d 1009 (9th Cir. 2014) ............................................................................................ 7

*Monsanto Co. v. Geertson Seed Farm*,
    561 U.S. 139 (2010) ............................................................................................................ 6

*Nat'l Family Planning & Reprod. Health Ass'n v. Gonzales*,
    468 F.3d 826 (D.C. Cir. 2006) ............................................................................................ 7

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003) .......................................................................................................... 12

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
    523 U.S. 726 (1998) .......................................................................................................... 12

*Parrish v. Dayton*,
    761 F.3d 873 (8th Cir. 2014) ......................................................................................... 3, 4

*Rivera v. Holder*,
    307 F.R.D. 539 (W.D. Wash. 2015) .................................................................................. 12

*San Diego Bldg. Trade Council v. Garmon*,
    359 U.S. 236 (1959) .......................................................................................................... 10

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS (16-cv-00322) iii

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

*San Diego Gun Rights Cte. v. Reno,*
   98 F.3d 1121 (9th Cir. 1996) ..................................................................................8

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.,*
   770 F.3d 1282 (9th Cir. 2014) ................................................................................8

*Susan B. Anthony v. Driehaus,*
   134 S.Ct. 2334 (2014) ......................................................................................7, 12

*S.W. Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n,*
   830 F.2d 1374 (7th Cir. 1987) ................................................................................9

*Texas v. U.S.,*
   523 U.S. 296 (1998) .........................................................................................3, 12

*Thomas v. Anchorage Equal Rights Comm'n,*
   220 F.3d 1134 (9th Cir. 1999) ................................................................................7

*Toilet Goods Ass'n v. Gardner,*
   387 U.S. 158 (1967) .............................................................................................12

*Underwood v. Mackay,*
   614 Fed.Appx. 871 (9th Cir. 2015) .......................................................................12

*United Farm Workers v. Ariz. Agricultural Employment Relations Bd.,*
   727 F.2d 1475 (9th Cir. 1984) ..............................................................................10

*Va. v. Am. Booksellers Ass'n, Inc.,*
   484 U.S. 383 (1988) ...............................................................................................8

*Valle del Sol Inc. v. Whiting,*
   732 F.3d 1006 (9th Cir. 2013) ................................................................................7

**State Cases**

*Belo Mgmt. Servs., Inc. v. ClickA Network,*
   184 Wn.App. 649, 343 P.3d 370 (2014) ..............................................................11

*DeLong v. Parmelee,*
   157 Wn.App. 119, 236 P.3d 936 (2010) ..............................................................11

*Uber Technologies Inc. v. Berwick,*
   CGC-15-546378 (Cal. Superior Ct.) ......................................................................5

**Federal Statutes**

15 U.S.C. § 26 ..................................................................................................................9

15 U.S.C. § 15 .............................................................................................................8, 9

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS (16-cv-00322) iv

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

**Other State Statutes**

RCW 19.86.090 ..............................................................................................................8, 9

RCW 42.56.540 ..............................................................................................................11

**Other Authorities**

Emin Dinlersoz et al., *Who Do Unions Target? Unionization Over the Life-Cycle of U.S. Businesses,* U.S. Census Bureau Center for Economic Studies research paper, June 2014 (CES 14-09) ..............................................................................2

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS (16-cv-00322) v

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

The Chamber contends that its members (Uber and Eastside) face imminent future injury from the Ordinance. Dkt. #39 ("Opp.") 14-18.[1] But the Ordinance will not require the Chamber's members to do *anything*—and so will not injure them—unless and until three uncertain events all occur: an organization applies for QDR status, is granted that status, and requests a driver list from the Chamber's member. And any harm resulting from mandatory negotiations is even more speculative, as it will occur only if a majority of a member's drivers choose to support a QDR's campaign to become their exclusive driver representative. In such circumstances, where the purported injury to the plaintiff depends upon the independent decisions and actions of third parties not before the court, the injuries are not "certainly impending," as required for an Article III injury.

The Chamber also fails to establish standing based on its members' "present" injuries. Opp. 7-14. Expending resources to prevent unionization is relevant only if injury is otherwise imminent, which it is not. And Eastside's alleged desire to require its drivers to promise not to sign statements of interest is an injury manufactured for purposes of this case, so does not satisfy Article III.

Even if these injuries satisfied Article III, moreover, the Chamber lacks associational standing because, contrary to its assertions, its antitrust, NLRA preemption, and Public Records Act claims require individual participation by its members. Finally, further factual development would aid this court in analyzing the Chamber's claims; thus, this court should refrain from exercising jurisdiction based on prudential ripeness concerns.

## ARGUMENT

**A. The Chamber has not shown any sufficiently imminent cognizable injury.**

*Future disclosure of driver list:* The Chamber does not contest that each of the following would need to occur before its members could possibly be required to take *any* action (here, turning over a list of drivers) under the Ordinance: (1) an entity applies to be certified as a QDR; (2) the City certifies that entity as a QDR; and (3) the entity targets one of the Chamber's two

---

[1] The Chamber presents no credible evidence that Q-for-Hire is covered by the Ordinance. Doc. 41 ¶5 (revealing no foundation for belief). *See also* Declaration of Kara Main-Hester ¶6.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS (16-cv-00322) - 1

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

identified members for organizing and requests a list of its drivers.[2]

Although the Chamber acknowledges that a speculative injury will not confer standing, it contends its injury is "sufficiently imminent" or "realistic" or "genuine." Opp. 15 (quotation marks omitted). The Chamber cites evidence that Teamsters Local Union No. 117 ("Local 117") extended three invitations to city officials (two in April 2014 and one in April 2015) to attend meetings with drivers, including some who drove for Uber, and a "rally" featuring Uber drivers. Opp. 16 (citing Dkt. #40-1, 40-2, 40-9, 40-10, 40-12). Such stale and limited evidence falls far short of establishing with sufficient certainty that the three contingent events will occur. Even in traditional union organizing contexts, a variety of factors affect unions' decisions regarding which employers to organize.[3] None of the Chamber's evidence shows that a union will select any Chamber member—as opposed to non-member Lyft or other similar companies—as its initial organizing target when the Ordinance takes effect.[4]

The Chamber contends that these "supposed contingencies ... are no greater than in other cases in which the Ninth Circuit has found standing." Opp. 17. But in *City of Oakland v. Lynch*, 798 F.3d 1159, 1162, 1163-64 (9th Cir. 2015), Oakland sought to challenge the federal government's *already filed* forfeiture action against a *specific* marijuana business based on the loss of specifically delineated tax revenue that would result if the forfeiture were ordered. The court held the likelihood of forfeiture was "not so speculative as to undermine the claim." *Id.* at 1164. *City of Oakland* would be comparable if the plaintiff there had not yet, but could have, been targeted for forfeiture and sought to challenge a *potential* forfeiture proceeding that the federal government had discretion to file. It is not analogous to the instant case, where it is unknown

---

[2] Defendants do not dispute *for purposes of this motion* that required disclosure of a driver list may constitute an injury for certain claims. *See* Opp. 15; Doc. 30 at 8. But the information revealed by such a list is already public, *see* Main-Hester Decl. ¶3-5 & Exs. A-C, and does not implicate any significant privacy or First Amendment concerns.

[3] *See, e.g.*, Emin Dinlersoz et al., *Who Do Unions Target? Unionization Over the Life-Cycle of U.S. Businesses*, U.S. Census Bureau Center for Economic Studies research paper, June 2014 (CES 14-09) (available at https://www2.census.gov/ces/wp/2014/CES-WP-14-09R.pdf).

[4] The Chamber asserts that the Carey declaration shows that Defendants "expect the disclosure provision to be triggered no later than December 2, 2016." Opp. 16 (citing Dkt. #32). But that declaration simply delineates the dates by which events such as a QDR demanding disclosure of a list of drivers "*might*" occur." Dkt. #32 ¶5 (emphasis added).

---

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS (16-cv-00322) - 2

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

whether any entity will, in fact, target a driver coordinator for organizing and, if so, *which one(s) it will target*. And in *Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977, 987 (9th Cir. 1991), the court deemed a challenge to a mandate to reduce flights ripe because the ordinance at issue was "mandatory," *requiring* the airline with the highest noise average to reduce flights. Because all the commercial airlines had joined the suit as plaintiffs, it was therefore "clear that at least one of the appellees" would "be required to reduce flights." *Id.* Here, by contrast, the Ordinance allows but does not mandate that a QDR target a driver coordinator for organizing; and even if it did mandate that one be targeted, not all driver coordinators are members of the Chamber.

In more analogous cases, courts have held challenges to laws authorizing collective worker organization *unripe* when whether an organizing drive would occur was uncertain. In *Parrish v. Dayton*, 761 F.3d 873, 875-76 (8th Cir. 2014), a challenge to a state childcare collective bargaining law was unripe, because no union recognition drive had begun. *Parrish* relied upon *Harris v. Quinn*, 134 S.Ct. 2618, 2644 n.30 (2014), which affirmed the Seventh Circuit's dismissal as unripe of a challenge to a state law authorizing unionization in a program where a union had lost an initial election, further elections were not scheduled, and no union was seeking recognition.[5]

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. U.S.*, 523 U.S. 296, 300 (1998) (internal quotations omitted). Here, any injuries to the Chamber's members that might result from the Ordinance's requirement that they provide a driver list if requested by a QDR within a specified time period depends upon uncertain events, and so a claim based upon those injuries is non-justiciable. As in *Clapper v. Amesty Int'l USA*, 133 S.Ct. 1139, 1148 (2013), where the plaintiffs' injuries rested on speculation about which communications the federal government would target, the Chamber's members' injuries depend on which (if any) driver coordinators a QDR (if certified)

---

[5] *See also Harris v. Quinn*, 656 F.3d 692, 700-01 (7th Cir. 2011), *aff'd in relevant part*, 134 S.Ct. 2618, 2644 n.30 (2014) (rejecting argument that state law made unionization more likely and so burdened union opponents; just as opponents of laws expend resources fighting enactment, but challenge to not-yet-enacted law is unripe, so too is challenge to union election that might not occur unripe); *cf. Associated General Contractors v. City of Columbus*, 172 F.3d 411, 419-21 (6th Cir. 1999) (challenge to law that would take effect only with court approval is unripe).

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS (16-cv-00322) - 3

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

will target for organizing. When harm to a plaintiff depends upon "the unfettered choices made by independent actors not before the court, … it [is] the burden of the plaintiff to adduce facts showing that these choices have been or will be made in such a manner as to produce causation and permit redressability of injury." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (internal quotation marks and citation omitted). That burden has not been met.

In any event, at most, this purported injury would allow the Chamber to challenge the driver list disclosure provision, not the remainder of the Ordinance. *See Davis v. FEC*, 554 U.S. 724, 734 (2008) (plaintiff "must demonstrate standing for each claim [it] seeks to press and for each form of relief that is sought") (quotations omitted).

***Future mandated negotiations:*** The attenuated and speculative nature of any injury is even more apparent in relation to the purported injury the Chamber's members will face if required to negotiate with an exclusive driver representative ("EDR"). Opp. 17. Such negotiations will be required only if (1) an entity applies to become a QDR, (2) it is certified, (3) it targets a Chamber member for organizing, (4) it conducts an organizing campaign, (5) it obtains majority support from the member's drivers, *and* (6) it is then certified by the City as an EDR. Even if the Chamber could show that one of its members faced a "sufficiently imminent" organizing campaign (which it has not done), it makes no effort to establish that such a campaign is likely to succeed. That would depend upon intervening actions by the QDR, the City, and the drivers themselves—who ultimately must decide whether they want to be represented by the QDR. Such an uncertain and speculative chain of events cannot support standing. *Cf. Parrish*, 761 F.3d at 876 (challenge to collective bargaining ordinance unripe where "[t]he election of an exclusive representative is not certainly impending, and may not occur at all").

Because any injury resulting from mandatory negotiations is far too speculative to satisfy Article III, the Chamber cannot show that any member has standing to challenge the provisions of the Ordinance requiring such negotiations. *See Davis*, 554 U.S. at 734 (standing must be shown for each claim and form of relief). Crucially, however, the Chamber's antitrust claims are premised

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS (16-cv-00322) - 4

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

*entirely* upon its contention that the mandatory negotiations required by the Ordinance authorize "horizontal price fixing." Opp. 23; *see also Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113 (1986) (antitrust plaintiff must establish injury "of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful"). Because none of the Chamber's members has standing to challenge the Ordinance's mandate of negotiations if an EDR is certified, its antitrust claims must be dismissed even if the Court concludes that the Chamber has standing to pursue any of its other claims.

**"Current" resource expenditures:** Besides relying on its insufficient showing that future injury is likely, the Chamber contends two members are *currently* being injured by choosing to spend money on antiunion consultants and lawyers and an antiunion campaign. Opp. 12. This showing of injury is extremely vague and non-specific; the declarations reference "costly efforts to prepare to engage with drivers," "substantial time and resources educating drivers," and "substantial time and resources" to "engag[e] costly experts and legal counsel" and "recruit[] and hir[e] labor-relations personnel." Docs. 42 ¶12, 43 ¶¶17, 19.[6] But they fail to quantify the expenses or explain with any specificity what they are.[7]

Even if these expenditures *were* adequately explained and documented, they would not demonstrate Article III injury. The Chamber concedes that such spending would support standing only if prompted by a "'substantial risk' of injury." Opp. 12. Thus, these supposedly current injuries add nothing to their standing argument. As the Supreme Court has explained:

---

[6] Uber's attribution of such expenditures solely to the Ordinance is particularly suspect in light of the pendency of numerous lawsuits, federal labor charges, and other controversies regarding its classification of drivers as independent contractors and its compliance with federal and state labor protections. *See, e.g.*, Doc. 43 ¶15; *O'Connor v. Uber Technologies, Inc.*, 3:13-cv-03826-EMC (N.D. Cal.); *Fisher v. Uber Technologies, Inc.*, 2:15-cv-01787-TSZ (W.D. Wa.); *Ogunmokun v. Uber Technologies, Inc.*, 1:15-cv-06143-NGG-JO (EDNY); *Micheletti v. Uber Technologies, Inc.*, 5:15-cv-01001-RCL (W.D. Tex.); *Lee v. Uber Technologies, Inc.*, 1:15-cv-11756 (N.D. Ill.); *Bruster v. Uber Technologies, Inc.*, 1:15-cv-02653-JG (N.D. Ohio); *Uber Technologies Inc. v. Berwick*, CGC-15-546378 (Cal. Superior Ct.). *Cf. Clapper*, 133 S.Ct. at 1152 (alleged injuries not fairly traceable to challenged law when they "had a similar incentive to engage in many of the countermeasures they are now taking").

[7] The declarations also assert that they are "expending resources" to lobby the City in rulemaking and to respond to the City's request for data, Docs. 42 ¶10, 43 ¶18, but the Chamber must concede that such actions are completely voluntary. *See also* 2nd Declaration of Douglas Carey ¶¶3-6, Exs. A-C.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS (16-cv-00322) - 5

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

> [Plaintiffs'] contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing – *because the harm [they] seek to avoid is not certainly impending.* In other words, [plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.... If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear.

*Clapper*, 133 S.Ct. at 1151 (emphasis added).

The risk that Uber or Eastside will be subject to a union organizing campaign is entirely speculative and depends on decisions by independent third parties. *See supra* at 2-4.[8] The Chamber relies on three Supreme Court decisions involving plaintiffs who took some action to avoid injury. Opp. 13. But that reliance is unavailing for the same reason that the Supreme Court rejected the plaintiffs' reliance on those cases in *Clapper*: In each, the plaintiffs had shown injury was *likely*, not speculative. 133 S.Ct. at 1153-54. For example, the *Monsanto Co. v. Geertson Seed Farms* plaintiffs presented actual evidence that their farms were within the range of bee pollination of genetically engineered alfalfa fields and that, even if no contamination occurred, they would still need to test their alfalfa in order to market it to consumers. 561 U.S. 139, 153-55 & n.3 (2010).[9] In none of those cases was there a substantial question as to whether the injury would actually occur in the absence of those avoidance measures, and no independent decision by a third party would determine whether the plaintiff would suffer injury. Here, by contrast, it is uncertain whether the Chamber's members will actually be subject to an organizing effort that will require them to take actions to avoid unionization. The Chamber cites no authority for the proposition that

---

[8] To support its position that it needs "to undertake these activities *now*," the Chamber asserts that "drivers can sign a statement of interest at any time after a QDR is designated" and that there will be "no mechanism to revoke those authorizations." Opp. 13 (emphasis in original). But the City has not yet promulgated rules, as required by the Ordinance, setting forth the standards and procedures for the submission of such statements of interest. Doc. 31-1 (Sec. 3 (adding 6.310.735(F)(1))). The Chamber's speculation about those rules is simply guesswork.

[9] In *Friends of Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167 (2000), the defendant's ongoing unlawful pollutant discharges into a river were undisputed, and nearby residents had "acted reasonably in refraining from using the polluted area." *Clapper*, 133 S.Ct. at 1153 (citing *Laidlaw*, 528 U.S. at 181-84). "[S]ubjective apprehensions" of future pollution would not have supported standing. *Id.* at 184. In *Meese v. Keene*, 481 U.S. 465 (1987), the federal government had designated certain films "political propaganda" and the elected official plaintiff had "demonstrated, through detailed [and uncontested] affidavits" that exhibiting the films would injure his reputation and impair his political career. *Clapper*, 133 S.Ct. at 1153 (citing *Keene*, 481 U.S. at 467, 473-75). A mere showing that he was deterred from showing the films would not have established injury. *Id.* at 473.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS (16-cv-00322) - 6

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

its election to spend money in light of that uncertainty suffices to establish an Article III injury.[10]

***Desired amendment of driver agreements:*** The Chamber's final standing argument relies on Eastside's assertion that it "wishes to amend its driver contracts to require drivers to decline union representation," which would arguably violate the Ordinance and so could expose it to prosecution. Opp. 7. As previously explained, Dkt. #30 at 10 n.4, 17, this amendment has no purpose except to manufacture standing, for if the Ordinance is lawful, the amendment is illegal, and if the Ordinance is unlawful, then the amendment has no purpose. The Chamber responds that "even if the Ordinance is unlawful, it would not make the non-unionization agreements 'legally meaningless,'" because they would remain "valid, private contractual agreements." Opp. 11. But the Chamber admits that Eastside's *only* reason to impose this requirement is "[t]o protect its business *from the burdens of the Ordinance.*" Opp. 7 (emphasis added). Eastside would have no reason to impose such agreements if the Ordinance were held invalid or did not exist.

By contrast, in *every* case cited by the Chamber that held a plaintiff had established standing based on a realistic prosecution threat, *see* Opp. 7-9, 11, the plaintiff wanted to take action that was *independent of the existence of the challenged law*.[11] In other words, if their legal challenge succeeded, they would engage in conduct that the challenged law forbade. Here, by contrast, if the legal challenge succeeds, Eastside will have no reason to require its drivers to agree not to unionize under the Ordinance. The dispute is completely manufactured.

---

[10] The Chamber's distinction of other cases is unavailing. Opp. 14. In *Mendia v. Garcia*, 768 F.3d 1009 (9th Cir. 2014), the plaintiff's fear that if he accepted release from custody he might be deported was reasonable, but mistaken. *Id.* at 1011, 1013 n.1. *Nat'l Family Planning & Reprod. Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006), shows that a need to expend resources (there, by petitioning an agency to clarify a rule) does not establish injury.

[11] *See Susan B. Anthony v. Driehaus*, 134 S.Ct. 2334, 2339, 2343-44 (2014) (sought to display billboard and disseminate statements criticizing elected officials' abortion votes); *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 121-22 (2007) (wanted to cease making royalty payments under contract); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 301-03 (1979) (had conducted boycott and consumer publicity campaign, and intended to continue); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1014-15, 1018 (9th Cir. 2013) (provided transportation and shelter to undocumented immigrants); *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1092 (9th Cir. 2003) (sought to engage in political advocacy without complying with reporting or disclosure requirements); *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1137 (9th Cir. 1999) (en banc) (had refused to rent to unmarried couples and intended to continue); *Bland v. Fessler*, 88 F.3d 729, 730-31 (9th Cir. 1996) (had used automatic dialing devices to advertise services and wished to continue).

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS (16-cv-00322) - 7

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

Even if this were not the case, no realistic threat of prosecution has been shown. First, the Ordinance authorizes, but does not require, investigation and prosecution. *See* Dkt. #31-1 (Sec. 3 (adding SMC 6.310.735.M.1.b.)). Second, no history of prosecution establishes "a '*genuine* threat of *imminent* prosecution,'" *San Diego Gun Rights Cte. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (emphasis added); the City's refusal to disavow possible prosecution does not aid the Chamber because "it is "not the Government's burden to disprove standing ...." *Clapper*, 133 S.Ct. at 1149 n.4.[12] Third, the Chamber frets that Eastside could be subject to a daily penalty of $10,000, Opp. 9, without acknowledging that penalties may begin only *after* a notice of violation issues and the violator "fails to cure" it. Dkt. #31-1 (Sec. 3 (adding SMC 6.310.735.M.1.b.). And while the Chamber asserts it could be subject to damages in a private lawsuit, Opp. 9, it is entirely speculative that any private party will, in fact, target Eastside.

Finally, this case does not raise the special issues present in cases where the threat of enforcement will itself have a chilling effect on exercise of speech or other constitutional rights.[13]

### B. Several of the Chamber's claims require individual member participation.

Associational standing requires that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. Though the Chamber seeks only declaratory and injunctive relief, Opp. 19, several of its claims require individual member participation, defeating its associational standing. *See, e.g., Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1292-93 (9th Cir. 2014) (association lacked standing to seek declaratory and injunctive relief on members' behalf).

*Antitrust:* The antitrust claims require individual member participation for two separate reasons. First, as a statutory matter both the federal Clayton Act and the Washington Consumer

---

[12] In the cases that mention the absence of such a government promise, Opp. 8, either there was an extensive history of prosecution under the challenged law, *see Holder v. Humanitarian Law Project*, 561 U.S. 1, 15-16 (2010), or the law restricted speech and thereby raised special dangers of chill and self-censorship, *see Babbitt*, 442 U.S. at 301-02; *Va. v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392-93 (1988).

[13] Moreover, because the Chamber must establish standing for each claim and form of relief, *see supra* at 4, even if Eastside's desire to impose such agreements raised a sufficiently genuine and imminent prosecution threat to establish Article III injury, that would grant standing *only* to challenge the Ordinance's anti-retaliation provision.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS (16-cv-00322) - 8

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

Protection Act ("CPA") prohibit associations from pursuing claims on their members' behalf, and instead require that such claims be pursued by the allegedly injured individuals themselves. Section 16 of the Clayton Act, which governs claims for injunctive relief, requires that claims be pursued only by a party "threatened [with] loss or damage by a violation of the antitrust laws." 15 U.S.C. §26. Courts have recognized this language prohibits associations from suing on their members' behalf. *Fin. & Sec. Prods. Ass'n v. Diebold, Inc.*, No. C04-04347WHA, 2005 WL 1629813, *3 (N.D. Cal. Jul. 8, 2005); *see also Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 151 F.Supp.2d 723, 730 (W.D. Va. 2001).[14] The CPA's statutory language also precludes associational standing, requiring that claims thereunder be pursued by a "person who is injured in his or her business or property." RCW 19.86.090; *see also* Dkt. #30 at 21 (explaining cases); *S.W. Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*, 830 F.2d 1374, 1380 n.3 (7th Cir. 1987) (comparable language of Clayton Act "does not encompass an association which has not itself suffered such injury").[15]

Second, the fact-specific nature of the Chamber's claims requires individual participation. The Chamber contends no factual development is necessary because it "is raising only a *per se* challenge" premised on its contention that the Ordinance "authorizes horizontal price fixing." Opp. 23. But only the provision of the Ordinance requiring negotiations over "the nature and amount of payments to be made by, or withheld from, the driver coordinator to or by the drivers" even arguably involves prices. Dkt. #31-1 (Sec. 3 (adding SMC 6.310.735(H)(1))). The remaining negotiation subjects, which include "best practices regarding vehicle equipment standards," "safe

---

[14] The Chamber asserts "there is nothing unique about the antitrust context," Opp. 21, but the very decision it cites recognized the unique statutory limitations on antitrust standing. *S.W. Suburban Bd. of Realtors* concluded that the language of §4 of the Clayton Act, 15 U.S.C. §15, prohibits associational standing altogether, and was "skeptical" that the language of §16 permits associations to seek injunctive relief. 830 F.2d 1374, 1380 n.3, 1381 (7th Cir. 1987). The reasoning of the other decisions the Chamber cites that interpreted §16 to allow for a "more lenient" standing requirement has since been rejected by the Supreme Court. *See Cargill*, 479 U.S. at 113.

[15] The Chamber cites no authority supporting its position that associations may bring preemption claims on behalf of members where the purportedly preempting statute prohibits associational standing. There is no reason why Congress or the Washington Legislature would require substantive claims under a statute to be pursued by the injured parties while permitting preemption claims based on the same statute to be pursued by others purporting to act on their behalf.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS (16-cv-00322) - 9

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

driving practices," criminal background checks of prospective drivers, and "minimum hours of work," *id.*, do not involve prices at all, and so are not even arguably subject to such a "*per se* challenge.*"* Evaluating the purportedly anticompetitive effects of negotiations over those subjects instead requires application of the "rule of reason," under which "all the facts, including the precise harms alleged to the competitive markets, and the legitimate justifications provided for the challenged practice" must be considered. *Cal. ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1133 n.10 (9th Cir. 2011) (en banc) (citation omitted). This Court cannot evaluate the impact on market competition of negotiations between a particular driver coordinator and an EDR over subjects such as criminal background checks or safety standards if that driver coordinator is not a party.[16]

**NLRA preemption:** The Chamber argues that individual member participation is not required to determine whether the Ordinance is preempted under *San Diego Bldg. Trade Council v. Garmon*, 359 U.S. 236 (1959), because the Ordinance is "categorically unenforceable" in that it permits "local officials and state courts" to determine "what the NLRA means." Opp. 21 (emphasis omitted). But the Supreme Court has rejected any such theory, and held that a party asserting that a state law is preempted because it covers workers who are arguably NLRA employees "must carry the burden of showing at least an arguable case before … jurisdiction … will be ousted." *Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 395-96 (1986). That approach *requires* state actors to decide whether a party has "advance[d]" a plausible "interpretation of the [NLRA]" and then "put forth enough evidence *to enable the court to find* that the Board reasonably could uphold a claim based on such an interpretation." *Id.* at 395 (emphasis added); *see also id.* at 398 (affirming state court's exercise of jurisdiction); *Marine Engineers v. Interlake S.S. Co.*, 370 U.S. 173, 177-78 (1962) (state court had jurisdiction to consider whether evidence showed entity was "arguably a 'labor organization'" under NLRA).[17] Accordingly, the only possible *Garmon*

---

[16] Should this Court conclude the Chamber has standing to pursue its antitrust claims, it should hold that the Chamber may *only* challenge the Ordinance's requirement that driver coordinators negotiate over payments to/from drivers.

[17] Were it otherwise, states could not extend bargaining rights to any of the categories of workers excluded from NLRA coverage, because there could be disputes over their status. *But see United Farm Workers v. Ariz. Agricultural Employment Relations Bd.*, 727 F.2d 1475, 1476 (9th Cir. 1984) ("Agricultural employees are excluded from coverage

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS (16-cv-00322) - 10

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

preemption claim the Chamber could assert is that specific Chamber members' contract with drivers who are arguably NLRA "employees." Given the individualized proof required for such a claim, the Chamber cannot pursue it on behalf of its members. *See* Dkt. #30 at 22-23.

**Public Records Act:** By arguing the "disclosure requirement is preempted *insofar as it requires an individual to produce a trade secret*," Opp. 22 (emphasis in original), the Chamber candidly requests an advisory opinion—that is, a general declaration that *if* any of the lists are considered trade secrets, the PRA preempts the Ordinance. This is improper. Instead, the Chamber's members "must provide specific, concrete examples illustrating that [their driver list] meets the requirements for a trade secret"—necessarily a case-by-case assessment. *Belo Mgmt. Servs., Inc. v. ClickA Network*, 184 Wn.App. 649, 657, 343 P.3d 370 (2014). The Chamber's individual members must also demonstrate that disclosure of the list "would clearly not be in the public interest and would substantially and irreparably damage" them, again requiring an individualized assessment. *Id.* at 661 (citing, *inter alia*, RCW 42.56.540).[18]

Further, the plain language of the PRA's injunction provision—the *only* method a third party may use to prevent disclosure of public records—provides the claim can only be brought by "a person who is named in the record or to whom the record specifically pertains." RCW 42.56.540; *see also DeLong v. Parmelee*, 157 Wn.App. 119, 149, 236 P.3d 936 (2010). Thus, the PRA's plain terms do not allow associational standing to prevent the disclosure of public records.[19]

### C. The Chamber's claims are also not prudentially ripe.

Even if Article III and associational standing were present, this Court should decline jurisdiction because "further factual development would significantly advance [this court's] ability

---

under the [NLRA]. Regulation of that part of the labor force is left to the states.") (citation omitted).

[18] Self-serving statements about driver privacy are unconvincing for two reasons. First, no drivers are members of the Chamber. Second, any driver working for Uber, for example, must obtain a Seattle business license, which requires information virtually identical to that which Uber now contends implicates driver privacy. Such information is already publicly available. *See* Main-Hester Decl. ¶¶3-5 & Exs. A-C.

[19] It is highly doubtful any of the Chamber's members' driver lists are "public records," subject to disclosure (or protection) under the PRA. *See DeLong*, 157 Wn.App. at 154 (defining "public record"). Moreover, if the Chamber were correct, then its members would be subject to the PRA and, therefore, any citizen could request records from its members. And under the PRA, there is strong presumption that public records are disclosable. *Id.* at 143.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS (16-cv-00322) - 11

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

to deal with the legal issues presented." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003); *see also Coons v. Lew*, 762 F.3d 891, 900-01 (9th Cir. 2014).[20] The Chamber's claims all rest on assumptions about how the Ordinance will function and who will invoke it. In addition, the novelty of the state law issues counsels against deciding them without the benefit of state-court review. *See Texas*, 523 U.S. at 301.[21]

The hardship inquiry focuses on "the degree and nature of the regulation's *present effect* on those seeking relief." *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1967) (emphasis added). "[M]ere uncertainty as to the validity of a legal rule" does not create such a hardship. *Nat'l Park Hospitality Ass'n*, 538 U.S. at 811 (2003). Nor does "having to file another suit." *City of Houston v. HUD*, 24 F.3d 1421, 1432 (D.C. Cir. 1994) (quotation omitted); *see also Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734-35 (1998).

The Chamber's practical concern that if the Court dismisses this case it might end up having "just sixteen days" to address the merits of a challenge to the list disclosure provision of the Ordinance is overstated. That time estimate assumes that every necessary act (QDR application, QDR certification, and request for a driver list) will occur on the *last possible day* before the deadline. But these events may occur earlier and thereby allow far more time to resolve any merits challenge that actually ripens. If they do not, the parties may discuss whether to agree to delayed enforcement to allow a longer period of time for briefing and decision. But the prudent exercise of this Court's jurisdiction requires it to refrain from deciding questions—no matter how novel or interesting—in the absence of a concrete factual record in cases such as this one.

## CONCLUSION

The action should be dismissed because it fails to satisfy Article III's case or controversy requirement. Alternatively, jurisdiction should be declined based on prudential ripeness.

---

[20] Prudential ripeness is not "defunct." Opp. 22. Numerous courts have invoked the doctrine after *Susan B. Anthony*. *See, e.g., Underwood v. Mackay*, 614 Fed.Appx. 871, 872-73 (9th Cir. 2015); *Coons*, 762 F.3d at 900-01; *Rivera v. Holder*, 307 F.R.D. 539, 552 (W.D. Wash. 2015) (Lasnik, J.).

[21] If this court dismisses the federal claims, it need not exercise jurisdiction over the Chamber's state law claims.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS (16-cv-00322) - 12

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

1
2                                    DATED this 20th day of May, 2016.
3                                    PETER S. HOLMES
                                     Seattle City Attorney
4
5                        By:         /s/Michael K. Ryan
                                     WSBA #32091
6                                    Gregory C. Narver, WSBA #18127
                                     Jessica Nadelman, WSBA #27569
7                                    Robert Tad Seder, WSBA #14521
                                     Josh Johnson, WSBA #33570
8                                    Assistant City Attorneys
                                     Seattle City Attorney's Office
9                                    701 Fifth Avenue, Suite 2050
                                     Seattle, WA 98104
10                                   Phone: (206) 684-8207 — Michael K. Ryan
                                     Phone: (206) 684-8233 — Gregory C. Narver
11                                   Phone: (206) 386-0075 — Jessica Nadelman
12                                   Phone: (206) 727-8498 — Robert Tad Seder
                                     Phone: (206) 386-1099 — Josh Johnson
13                                   Fax: (206) 684-8284
                                     E-mail: michael.ryan@seattle.gov
14                                   E-mail: gregory.narver@seattle.gov
                                     E-mail: jessica.nadelman@seattle.gov
15                                   E-mail: tad.seder@seattle.gov
                                     8 E-mail: josh.johnson@seattle.gov
16
17                                   STEPHEN P. BERZON (pro hac vice)
                                     STACEY M. LEYTON (pro hac vice)
18                                   P. CASEY PITTS (pro hac vice)
                                     Altshuler Berzon LLP
19                                   177 Post Street, Suite 300
20                                   San Francisco, CA 94108
                                     Phone: (415) 421-7151
21                                   Fax: (415) 362-8064
                                     E-mail: sberzon@altber.com
22                                           sleyton@altber.com
                                             cpitts@altber.com
23
24                                   Attorneys for Defendants
25
26

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of May, 2016, I electronically filed this REPLY IN SUPPORT OF DEFENDANTS' FRCP 12(b)(1) MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the below-listed:

| | |
|---|---|
| Timothy J. O'Connell | tim.oconnell@stoel.com |
| Noel J. Francisco | nfrancisco@jonesday.com |
| Steven P. Lehotsky | slehotsky@uschamber.com |
| Jacqueline M. Holmes | jholmes@jonesday.com |
| Christian G. Vergonis | cvergonis@jonesday.com |
| Warren Postman | wpostman@uschamber.com |
| Lily Fu Claffee | lfclaffee@uschamber.com |
| Robert Stander | rstander@jonesday.com |

DATED this 20th day of May, 2016, at Seattle, Washington.

By:  /s/Michael K. Ryan
Michael K. Ryan, WSBA #32091
michael.ryan@seattle.gov

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS (16-cv-00322) - 14

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104