Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> THE CITY OF SEATTLE; SEATTLE DEPARTMENT OF FINANCE AND ADMINISTRATIVE SERVICES; and FRED PODESTA, in his official capacity as Director, Finance and Administrative Services, City of Seattle, <br><br> Defendants. | No.   16-cv-00322-RSL <br><br> DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM <br><br> **NOTED ON CALENDAR FOR ORAL ARUGMENT:** <br> **July 19, 2016 @ 1:30** |

DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL
MEMORANDUM (16-cv-00322)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

The Chamber now contends that the City's recent increase in a per-ride Transportation Network Company ("TNC") license fee "eviscerates" the City's standing and ripeness arguments. Dkt. #49 at 2:2. Far from it. The modest $0.04 increase to an already-existing fee in no way bolsters the Chamber's standing or makes this abstract dispute ripe. Rather, it underscores the speculative nature of the Chamber's purported injuries.

*First*, it is well established that standing must be present when a case is filed and a plaintiff cannot rely on post-complaint events to satisfy Article III. "[S]tanding is determined as of the date of the filing of the complaint. The party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its standing." *Yamada v. Snipes*, 786 F.3d 1182, 1204 (9th Cir. 2015) (quotation & alteration omitted) (holding legislation enacted after complaint filed cannot establish plaintiff's standing); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992) (redressability cannot be established by post-commencement developments) (plurality); *Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1037-38 (8th Cir. 2000) (holding that post-complaint events were not "relevant on the issue of standing"); *Perry v. Village of Arlington Heights*, 186 F.3d 826, 830 (7th Cir. 1999) (same). The Chamber filed its complaint on March 3, 2016, Dkt. #1; thus, the Chamber's reliance on a purported injury occurring months later is improper and incompatible with Article III.[1]

*Second*, assuming such evidence is properly considered, and that the complained-of fee increase would constitute an Article III injury,[2] that injury is not caused by (or "fairly traceable"

---

[1] Article III concerns aside, the Chamber's request is likely improper because it has not sought to amend its complaint, nor has it asked this Court to take judicial notice of the increase. Moreover, the Chamber's assertion that the City intentionally waited to issue the proposed rule increasing fee until the day after the Chamber filed its Opposition, in an attempt to gain a litigation advantage, is simply false. *See* 2nd Declaration of Kara Main-Hester at ¶¶6-9.

[2] It is unlikely that the increase constitutes Article III injury. The Chamber makes no showing that *its member* must pay the *increased amount* out of its own existing revenues as opposed to passing on the increased cost to its customers. In fact, as recently as February 2016, the per-ride fee was charged directly to Uber's customers. *See* 2nd Main-Hester Decl., at Exhibit A. To the extent Uber now pays the fee, such payment is little more than a self-inflicted injury because nothing in the rules implementing the fee increase requires that the fee be paid by Uber's funds. *See id.* at ¶ 5. Moreover, the fee increase does not create any additional administrative burden for Uber that did not exist before the challenged Ordinance came into existence because Uber has always been required to collect the fee and ensure that the City receives the funds. *See id.* at ¶¶ 4-5. Whether the fee is $0.10 or $0.14, the administrative burden is the same.

DEFENDANTS' RESPONSE TO PLAINTIFF'S
SUPPLEMENTAL MEMORANDUM (16-cv-00322) - 1

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

to) the Ordinance. *Lujan*, 504 U.S. at 560. Notwithstanding the Chamber's mischaracterization of the fee as an "Ordinance-implementation fee," Dkt. #49 at 2:21, the fee is completely independent of the Ordinance. In fact, the per-ride fee has existed for some time, well before the Ordinance's enactment. *See* 2nd Main-Hester Decl. at ¶ 4. Even the recent fee *increase* is not fairly traceable to the Ordinance; as shown by the City's rulemaking notices, the increase was prompted by the additional burdens presented by the growing TNC/for-hire sector:

> The number of TNC licenses, for-hire driver's licenses, vehicle endorsements and the total TNC trips has been significantly larger than was originally contemplated by Ordinance 124524. As a result, administrative, regulatory and enforcement costs have also been significantly higher than expected.

Dkt. #50-1 at 2, #50-3 at 2.[3] Those greater costs requiring the fee increase include the need to adopt a new software system and to commit greater resources for enforcement of existing laws, separate and apart from any additional costs associated with the Ordinance. 2nd Main-Hester Decl. at ¶ 7. When multiple factors may contribute to an injury, the fairly traceable requirement is not met. *See San Diego Cty. Gun Rights Cte. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) (injury not "fairly traceable" when multiple factors contributed to price increases causing economic injury).

The Chamber's only linkage between the $.04 increase and the costs of implementing the challenged Ordinance is a telephonic hearsay statement by a city employee charged with implementing TNC regulations that "*a portion* of this four-cent increase will be used to pay for the costs of implementing the Ordinance." Dkt. #49 (emphasis added). But even if this hearsay statement were credited, that some unspecified "portion" of the proceeds of the fee increase will be *used* to implement the Ordinance shows neither that those costs caused the increase *nor* that the increase would not have occurred if it were not for the Ordinance. In fact, because the costs of the new software system are necessitated by the explosive growth of the TNC industry, the

---

[3] Seattle Ordinance 124524 was enacted in 2014 to establish new regulations for the taxi, for-hire, and TNC industries. The Ordinance challenged by this lawsuit, Seattle Ordinance 124968, was adopted at the end of 2015.

DEFENDANTS' RESPONSE TO PLAINTIFF'S
SUPPLEMENTAL MEMORANDUM (16-cv-00322) - 2

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

$.04 increase would have been implemented, *in the same amount*, even if the Ordinance had never been adopted. *See* 2nd Main-Hester Decl. at ¶ 10.

The absence of any causal linkage between the fee increase and the Ordinance highlights the difference between this case and *Montana Shooting Sports Ass'n v. Holder*, 727 F.3d 975 (9th Cir. 2013). There, the plaintiff challenged a federal firearms licensing scheme requiring all firearms manufacturers and sellers to obtain a license and pay associated licensing fees and taxes. *Id.* at 978, 980. Here, by contrast, the Chamber is not challenging the for-hire driver licensing scheme, nor the fee imposed as part of that licensing scheme. Rather, the Chamber is challenging the Ordinance, and indirectly links it to the licensing fee: the Chamber contends that the Ordinance causes increased costs to the City, which, in turn, has caused the City to increase a separately authorized fee imposed upon TNCs. Because the Chamber's claims do not target the per-ride fee, this fee increase cannot give the Chamber standing to challenge the Ordinance.[4]

*Third*, invalidating the Ordinance will not restore the fee to its original amount and so will not redress the purported "injury" of having to pay the increase. To satisfy Article III, a plaintiff must show it is "likely" that the complained-of "injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotations omitted). Even if the Chamber could show that the increase was caused by the Ordinance (it wasn't), it cannot demonstrate that the increase would likely be redressed by the Ordinance's invalidation, the relief sought in this lawsuit. The Chamber sets forth no evidence or reason to believe that if the Ordinance is struck down the City will rescind or reduce the $0.04 increase. The opposite is true: Even if the Ordinance is struck down the increased fee amount will remain the same. *See* 2nd Main-Hester Decl. at ¶ 11.

---

[4] The inadequate linkage between the allegedly injurious increase and the subject of this lawsuit is well illustrated by application of the rule that a plaintiff must demonstrate standing for each claim and each form of relief. *See Davis v. FEC*, 554 U.S. 724, 734 (2008). Even if the Chamber could show that the fee increase were caused by the Ordinance (which it cannot), it could not establish that the increase resulted from those aspects of the Ordinance that give rise to the Chamber's legal challenge (e.g., the requirement of collective negotiations that provides the basis for its antitrust claim).

DEFENDANTS' RESPONSE TO PLAINTIFF'S
SUPPLEMENTAL MEMORANDUM (16-cv-00322) - 3

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

*Finally*, the Chamber asserts that the fee increase shows that "Defendants know full well that they will certify a QDR to try to organize drivers using the Uber App." Dkt. #49 at 3:15-16. Absent speculation based on the actions of third parties not before the court, there is no way to know whether a QDR, if certified, will seek to organize Uber drivers (as opposed to some other driver company that is not a member of the Chamber, or no driver company at all). In fact, there are at least eleven (11) companies subject to the Ordinance. *See* 2nd Main-Hester Decl. at ¶ 12. Unless the Chamber can predict the future, its bold prediction that it is a certainty that Uber will be targeted by organizers is nothing more than pure speculation.[5]

But regardless of whether a QDR is certified and decides to seek support from Uber's drivers (a highly speculative proposition), the City will have to incur costs in order to prepare Director's Rules (which must be promulgated even if no QDR is certified) and must update software systems in order to be prepared in the event that a QDR does seek to organize drivers (which may or may not happen, and if it does, may or may not target a member of the Chamber) That the City must undertake such activities in no way suggests that a specific driver company that *belongs to the Chamber* faces the imminent injury required for Article III standing. *See Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977, 987 (1991) ("threat of action is very real" only where *all* carriers subject to ordinance were before the court). The Chamber's guesswork as to how third parties will act fails to satisfy the demands of Article III.

---

[5] Because the Chamber cannot establish causation or redressability, *MedImmune v. Genentech, Inc.*, 549 U.S. 118 (2007), is entirely irrelevant. In *MedImmune*, the defendants had threatened litigation to enjoin the plaintiff's sales if it ceased paying royalties under a patent that was disputed, but also argued that the plaintiff could not establish the demands of Article III so long as plaintiff continued paying such royalties "under protest." *Id.* at 128. In rejecting this argument, the Court held that a company did not need to discontinue royalty payments, risking treble damages and the loss of 80% of its business, in order to establish a case or controversy given how coercive the threatened litigation was. *Id.* at 134 & n.12. Here, by contrast, the City does not contend that any Chamber member must refuse to pay the increased fee, thereby violating the law and risking the consequences of noncompliance in order to rely on the increase to establish standing. Rather, the City simply points out that the Ordinance does not establish the fee and the fee amount would be the same even if the Ordinance were never enacted or repealed, so any claimed injury from the increase is neither fairly attributable to the Ordinance nor redressable through this lawsuit.

DEFENDANTS' RESPONSE TO PLAINTIFF'S
SUPPLEMENTAL MEMORANDUM (16-cv-00322) - 4

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

DATED this 11th day of July, 2016.

PETER S. HOLMES
Seattle City Attorney

By: /s/Michael K. Ryan
WSBA #32091
Gregory C. Narver, WSBA #18127
Jessica Nadelman, WSBA #27569
Robert Tad Seder, WSBA #14521
Josh Johnson, WSBA #33570
Assistant City Attorneys
Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
Phone: (206) 684-8207 — Michael K. Ryan
Phone: (206) 684-8233 — Gregory C. Narver
Phone: (206) 386-0075 — Jessica Nadelman
Phone: (206) 727-8498 — Robert Tad Seder
Phone: (206) 386-1099 — Josh Johnson
Fax: (206) 684-8284
E-mail: michael.ryan@seattle.gov
E-mail: gregory.narver@seattle.gov
E-mail: jessica.nadelman@seattle.gov
E-mail: tad.seder@seattle.gov
E-mail: josh.johnson@seattle.gov

STEPHEN P. BERZON (pro hac vice)
STACEY M. LEYTON (pro hac vice)
P. CASEY PITTS (pro hac vice)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Phone: (415) 421-7151
Fax: (415) 362-8064
E-mail: sberzon@altber.com
E-mail: sleyton@altber.com
E-mail: cpitts@altber.com

Attorneys for Defendants

DEFENDANTS' RESPONSE TO PLAINTIFF'S
SUPPLEMENTAL MEMORANDUM (16-cv-00322) - 5

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

# CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of July, 2016, I electronically filed this DEFENDANTS' RESPONE TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the below-listed:

| | |
|---|---|
| Timothy J. O'Connell | tim.oconnell@stoel.com |
| Noel J. Francisco | nfrancisco@jonesday.com |
| Steven P. Lehotsky | slehotsky@uschamber.com |
| Jacqueline M. Holmes | jholmes@jonesday.com |
| Christian G. Vergonis | cvergonis@jonesday.com |
| Warren Postman | wpostman@uschamber.com |
| Lily Fu Claffee | lfclaffee@uschamber.com |
| Robert Stander | rstander@jonesday.com |

DATED this 11th day of July, 2016, at Seattle, Washington.

By: /s/Michael K. Ryan
Michael K. Ryan, WSBA #32091
michael.ryan@seattle.gov